No. 04-639

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 64

_____

STOCKMAN BANK OF MONTANA,
a Montana banking corporation,

      Plaintiff, Respondent and Cross-Appellant,

  v.

RICK POTTS,

      Defendant and Appellant.

_____

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 99-085
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Patricia D. Peterman and W. Scott Green, Patten, Peterman, Bekkedahl &
Green, P.L.L.C., Billings, Montana

      For Respondent:

            Gerald B. Murphy and Gerry Fagan, Moulton, Bellingham, Longo and
Mather, P.C., Billings, Montana

_____

Submitted on Briefs:  May 31, 2005

Decided:  April 4, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Rick Potts (Potts) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion for a new trial. Stockman Bank of Montana (Bank) cross-appeals a jury instruction and admission of expert testimony offered by Potts regarding the measure of damages for loss of cattle. We affirm. Thus, we do not consider the Bank's cross-appeal.

¶2    We restate and address the issues on appeal as follows:

¶3    1. Did the District Court err in establishing the order of trial?

¶4    2. Did the District Court err in excluding evidence of the Bank's offers to settle?

¶5    3. Did the District Court err when it did not provide the jury with a transcript of the testimony of a witness?

¶6    4. Must a new trial be granted because the Bank's counsel made a remark about a witness to the judge?

¶7    5. Did the District Court err because it refused to allow Potts' former spouse to testify?

¶8    6. Did the District Court err when it instructed the jury concerning admitted facts?

¶9    7. Did the District Court err by instructing the jury how to decide the case?

BACKGROUND

¶10   This is the third time this case has come before this Court. For a more complete statement of the facts, see *Stockman Bank of Mont. v. Potts*, 2002 MT 178, 311 Mont. 12, 52 P.3d 920 (*Stockman Bank I*). In *Stockman Bank I*, we determined that a question of fact existed as to whether a purported settlement agreement was contingent on Potts

2

receiving a loan from another bank. *Stockman Bank I*, ¶¶ 23, 26. We reversed the District Court's order granting summary judgment to the Bank and remanded for further proceedings. *Stockman Bank I*, ¶ 27.

¶11 On remand, the District Court scheduled an evidentiary hearing to resolve the case. Potts demanded a jury trial, and applied to this Court for a writ of supervisory control to stay the scheduled hearing. By Order of October 21, 2003, entered in Case No. 03-600, *State of Mont. ex rel. Potts v. District Court* (*Stockman Bank II*), this Court granted Potts' application for supervisory control and directed the District Court to try the case to a jury.

¶12 Following a nine-day trial, the jury determined that Potts had settled all his claims against the Bank in January of 2000. Potts moved for a new trial, which motion was denied. This appeal followed. Additional facts will be discussed as necessary.

STANDARD OF REVIEW

¶13 This Court reviews a denial of a motion for a new trial to determine whether the district court manifestly abused its discretion. *Rolison v. Bozeman Deaconess Health Servs., Inc.*, 2005 MT 95, ¶ 13, 326 Mont. 491, ¶ 13, 111 P.3d 202, ¶ 13. Discretionary trial court rulings are reviewed to determine whether the district court abused its discretion. *In re Marriage of Schoenthal*, 2005 MT 24, ¶ 9, 326 Mont. 15, ¶ 9, 106 P.3d 1162, ¶ 9. The same standard is used to review a district court's evidentiary rulings. *Payne v. Knutson*, 2004 MT 271, ¶ 20, 323 Mont. 165, ¶ 20, 99 P.3d 200, ¶ 20. This Court reviews a district court's decision to disallow a jury's request to re-hear testimony for an abuse of discretion. *State v. Thompson*, 2001 MT 119, ¶ 16, 305 Mont. 342, ¶ 16,

28 P.3d 1068, ¶ 16. This Court gives district courts great leeway in instructing the jury, and we will overturn a jury instruction only in the case of an abuse of discretion. *Payne*, ¶ 14.

DISCUSSION

ISSUE ONE

¶14 **Did the District Court err in establishing the order of trial?**

¶15 Potts argues that the District Court erred in not allowing him to present his counterclaim that the Bank breached its contract with Potts to the jury before the Bank presented its case. Potts contends that he should have been able to present his case first because the Bank was defending against his counterclaim rather than seeking an affirmative judgment. Potts relies on § 25-7-104, MCA, and *Continental Oil Co. v. Bell* (1933), 94 Mont. 123, 21 P.2d 65.

¶16 Contrary to Potts' assertion, the Bank sought an affirmative judgment. In its original complaint, filed February 2, 1999, as well as its amended complaint, filed April 3, 2001, the Bank asserted that Potts breached his contract with the Bank. The amended complaint added a second claim that the dispute with Potts had settled, and that the rest of the case should be dismissed because of the settlement. The Special Verdict Form submitted to the jury listed both claims, asking the jury to decide whether Potts and the Bank had both settled all their claims in January 2000, and also whether Potts had breached his contract with the Bank. The Special Verdict Form first asked whether Potts and the Bank settled all claims, and instructed the jury that if they answered this question affirmatively, they did not need to go further. The jury answered "yes" to the first

4

question.

¶17 Section 25-7-104, MCA, reads as follows:

> Where the defendant interposes a counterclaim and thereupon demands an affirmative judgment against the plaintiff, the mode of trial of an issue of fact arising thereupon is the same as if it arose in an action brought by the defendant against the plaintiff for the cause of action stated in the counterclaim and demanding the same judgment.

This statute does not require that proof of Potts' counterclaim precede the Bank's case. Similarly, *Continental Oil* holds that a counterclaim can be tried in the same proceeding as the original claim, 94 Mont. at 132, 21 P.2d at 66-67, but does not discuss the order of presenting the claim and counterclaim at trial.

¶18 The order in which proof is admitted at trial is within the sound discretion of the trial court. *State v. Snaric* (1993), 262 Mont. 62, 69, 862 P.2d 1175, 1179; *State v. White* (1980), 185 Mont. 213, 217, 605 P.2d 191, 194. Section 25-7-301, MCA, also allows the trial court discretion regarding the order of trial "for good cause and special reason." It was incumbent on the Bank to affirmatively prove its claim that all issues between it and Potts had settled. This could be considered a claim as well as a defense against Potts' counterclaim. Ordering the trial so that the jury considers whether Potts' counterclaim had been settled, before deciding the merits of the counterclaim, is a logical sequence for consideration of the issues. Under the present circumstances, the District Court did not abuse its discretion in setting the order of trial.

## ISSUE TWO

¶19 **Did the District Court err in excluding evidence of the Bank's offers to settle?**

¶20 Potts claims error because the District Court excluded argument concerning

5

Orders issued by the District Court on April 1, 2000, and statements made by the Bank's attorney on March 30, 2000, and excluded from evidence a statement made by the Bank's attorney contained in a memorandum submitted to the District Court on December 18, 2000. To delineate these matters, we describe them as the "Orders," the "$75,000 Question," and the "Memorandum." These constitute the following:

1. Two orders issued by the District Court on April 1, 2000, as the result of a status conference held on March 30, 2000 (Orders). These Orders vacated the scheduled trial and ordered the parties to arrange and conduct a settlement conference. One of the Orders stated that the attorneys for the parties had advised the court that a settlement conference was advisable.

2. Statements made by counsel for the Bank at an attorneys' meeting after the status conference on March 30, 2000. These statements included a question by Bank's counsel to Potts' counsel asking whether the case could settle for $75,000 ($75,000 Question).[1]

3. A Motion and Memorandum filed by the Bank on December 18, 2000, wherein counsel for the Bank advised the District Court that the parties had yet to fully explore settlement (Memorandum).

¶21 The judgment roll and transcript present a singularly confusing record of how these statements were considered in the District Court. Unfortunately, the briefs by both parties only add to the confusion as they do not accurately describe the record.

¶22 Because of the confusion generated by the record, the briefs of both parties, and the subject matter of the present case, we recite more of the tortured record concerning these statements in order to address the issue presented.

¶23 On March 23, 2004, one day before the jury trial commenced, the Bank filed a motion to quash certain subpoenas that had been issued at Potts' request. The motion

---

[1] Potts also notes an alleged statement by the Bank's attorney asking Potts what it would take to settle the case on March 30, 2000. Potts does not correctly cite to, nor can we find, where he attempted to put this statement into evidence.

concerned, *inter alia,* the Memorandum noted above, and sought to exclude it from evidence. The District Court made no ruling on the Bank's motion to exclude the Memorandum before the jury was impanelled.

¶24 The trial began the next day and continued until April 7, 2004. On March 26, 2004, during the trial, the Bank filed two motions in limine regarding the statements in issue. The first focused on the $75,000 Question. In this first motion, the Bank argued that the $75,000 Question was an inadmissible offer of compromise under Rule 408, M.R.Evid. The Bank's second motion in limine sought to preclude Potts from asserting, arguing or otherwise mentioning the Memorandum. The Bank, in support of this second motion in limine, argued the Memorandum must be excluded pursuant to Rule 403, M.R.Evid.

¶25 The District Court had not ruled on the Bank's motions in limine by March 31, 2004. On that day, the Bank concluded its direct examination of Patrick Kelly (Kelly). Kelly was an attorney who had previously represented the Bank in this matter. During her cross-examination of Kelly, Potts' counsel moved to admit the Orders. The Bank did not object, and the Orders were admitted into evidence. Potts' counsel proceeded to ask Kelly questions about the Orders. She did not inquire of him, and he did not testify, about whether, on behalf of the Bank, he had offered to settle the case on March 30, 2000.

¶26 Potts' counsel also directed questions about the Orders to another witness called by the Bank that same day, James Patten (Patten). Patten was also a lawyer, and he had previously represented Potts in this matter.

7

¶27 Also on March 31, 2004, the Bank called W. Scott Green (Green), an attorney who represented Potts, as a witness. During her examination of her co-counsel Green, Potts' counsel inquired about Green's conversations with Kelly on March 30, 2000, the same day of the status conference that resulted in the Orders. Green testified that Kelly wanted to know if Potts would take $75,000 to settle. The Bank did not object to such testimony.

¶28 Potts' counsel then began to ask Green about the Bank's change of counsel which occurred eight months later, in December of 2000. These questions were prefatory to eliciting testimony concerning the Memorandum, which had been filed by the Bank's new counsel on December 18, 2000. At this point, the Bank's counsel objected, and reminded the court that he had filed a motion in limine regarding the Memorandum. It was near the afternoon recess, so the District Court dismissed the jury and heard argument on the objection.

¶29 During the hearing on the objection, the Bank's counsel recognized that he did not object to the testimony regarding the $75,000 Question. Bank's counsel did, however, argue that the Memorandum and the $75,000 Question were offers of compromise excluded by Rule 408, M.R.Evid.

¶30 After hearing argument concerning the Memorandum, the District Court opined that it most likely constituted an attempt by the Bank to resettle the case. Then, after some further discussion, the District Court did grant the Bank's motion in limine, but stated its exclusion order applied only to all post-April 2000 matters mentioning settlement. This order had the effect of not striking from evidence either the Orders or the $75,000 Question. But, it did exclude from evidence the Memorandum. The trial

8

then proceeded. Potts' counsel had the opportunity to make further inquiries of Green concerning the $75,000 Question and the Orders, but did not do so.

¶31 After the close of Potts' case on April 6, 2004, the Bank moved for a directed verdict. Counsel for the Bank argued that mention of any settlement discussions after January 28, 2000, by Potts' counsel during closing argument would be improper under Rule 408, M.R.Evid. In response, Potts' counsel argued that such evidence was highly relevant and could be argued in closing since it had been admitted into evidence. Neither counsel explicitly called to the District Judge's attention the fact that he had not ruled that the $75,000 Question and the Orders were excluded, that they were in evidence, neither had been stricken, and only the Memorandum had been excluded.

¶32 In discussing all of the statements at issue, the District Judge stated:

> I think the Court's rulings are clear on that. Those things were–would be new settlement discussions that are canted toward this trial, and therefore, barred by 40–whatever it is, the rule that says you don't talk about settlement discussions.

¶33 Potts' counsel then inquired of the District Judge whether she could argue concerning evidence that had been admitted. The District Judge said yes, but went on to qualify this response by adding such argument could be made only as long as nothing was argued in violation of his rulings. Potts' counsel then said that she was not talking about the Memorandum. She did not, however, go on to explain that the District Court's prior ruling had not excluded the $75,000 Question and the Orders, both of which were in evidence. The District Judge, admitting he was confused by counsel's argument, then remarked, "I don't know what we're talking about."

¶34    The discussion continued, making things worse.  The Bank's counsel mentioned one of the Orders, and the District Judge remarked he did not think it was in evidence. The Bank's counsel said:

> I think it is.  And I think it was over our objection, but the problem I have is if they're trying to use that as an admission against interest, that would violate the court order.

Potts' counsel did not point out the error in this statement, which was that the Order had been admitted into evidence without objection.  And, she did not remind the District Judge that neither the Orders nor the $75,000 Question had been excluded by the order previously entered, as noted at ¶ 30.

¶35    Potts' counsel again recognized that the District Court had excluded the Memorandum.  She stated that she was "not going there."

¶36    After further discussions, the District Court characterized one of the Orders as follows:

> I think it only goes to show that after the–what they allege was a settlement, didn't actually occur.  I don't think it at all serves to show that they believed back in January that it hadn't settled, which is the issue on the settlement.  And so don't go there, or you'll be–you know, it will be in violation of the Court's ruling.

¶37    Potts' counsel attempted to clarify that the District Court's previous ruling only excluded the Memorandum.  However, the District Judge replied, "I know, but this is the same kind of thing."

¶38    The District Judge then told Potts' counsel to not make it look like the Orders meant that the District Court agreed with Potts that there was no settlement.

¶39    The result of the District Judge's statements, which had the force of court orders,

10

was that the District Court reversed itself concerning the admissibility of the $75,000 Question and the Orders. The effect of the District Court orders was that even though the jury had before it the Orders, and had heard the testimony concerning the $75,000 Question, it heard no explanation of, or argument on, this evidence.

¶40    Rule 408, M.R.Evid., provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

¶41    Examination of the District Court's belated prohibition of argument on the Orders and the $75,000 Question during closing argument, in the context of this case, leads only to the conclusion that the District Court was confused. Even though the District Court should not have admitted into evidence either the Orders or the $75,000 Question, it did so as there was no objection. And then, later, the District Court prohibited argument on the Orders and the $75,000 Question.

¶42    The first Order in question merely summarized the March 30, 2000, conference by stating that Potts had paid his debt to the bank which resolved some issues, and mentioned that Potts intended to pursue his counterclaim. It did not mention settlement discussions. As this first Order did not mention settlement at all, Potts' counsel was not

11

prohibited from commenting on it in her closing argument. It is not surprising that she did not do so, as it proves nothing.

¶43 The second Order also memorialized a part of the conference held before the District Court on March 30, 2000. It set deadlines for completing steps prior to trial, re-scheduled the trial, and also stated:

> The parties deemed a settlement conference advisable and the parties shall make arrangements for and conduct a settlement conference on or before February 2, 2001, in accordance with Rule 29 of the Thirteenth Judicial District Court Rules of Practice.

¶44 This recitation by the then presiding judge only says the parties deemed a settlement conference advisable, and the judge told them to try and settle the case. The only possible value to Potts of this recitation is that counsel for both parties "deemed a settlement conference advisable." This recitation by the District Court only shows that settlement was discussed. This type of evidence is exactly what Rule 408, M.R.Evid., prohibits. That is, when a party discusses the possibility of settlement, such discussion cannot be used against that party. This is necessary because it would be impossible for a party to mention settlement if a jury is later told that doing so is evidence of liability.

¶45 Potts argues that the purpose of introducing the Orders is not to prove liability, but to impeach the Bank's witnesses and to show bias. No witness for the Bank ever testified that the Bank did not deem settlement advisable, let alone the Bank's counsel, Kelly. Thus, there was nothing to impeach. There was no need whatsoever to show a bias on the part of the Bank's counsel who deemed settlement advisable. He was the lawyer for the Bank – it goes without saying he had a bias in favor of his client. Contrary

12

to Potts' assertions, the only possible reason for wanting to introduce this evidence was to prove the bank was liable, which is in direct contravention of Rule 408, M.R.Evid.

¶46 Concerning the $75,000 Question, after the Bank had completed its examination of Potts' counsel, Green, and during questioning by his co-counsel, the following testimony was heard by the jury:

Question: Now, I want to draw your attention to March 30th, 2000, and do you remember that day?

Answer: I do.

Question: And explain to the jury what happened on that day.

Answer: On – that was the day that Andy Patten and Pat Kelly had gone over to Judge Colberg's office to go to a pretrial conference. And after they returned from the pretrial conference, then I was asked to come into Andy Patten's office with Pat Kelly.

Question: And what happened in Andy's office?

Answer: At that time Andy and Pat were discussing something, and then Andy introduced me to Pat Kelly, and informed Pat Kelly that I would then now be taking over the case, and I would be handling the counterclaim for Rick Potts.

Question: Now, did Mr. Kelly indicate to you at any time during that conversation that somehow this was the – the case had settled?

Answer: No, actually it was to the contrary. Mr. Potts – Mr. Kelly said that maybe we could settle this case, and he came up with different suggestions as to possibly how to resolve the case.

Question: So on March 30th, he made some additional suggestions?

Answer: Yes.

Question: And do you remember what those were?

| | |
|---|---|
| Answer: | I do. He – his comment was, Well, defense costs are going to be about $75,000, how about it if we just settle the thing for $75,000. |
| Question: | And what was your response? |
| Answer: | Well, I couldn't make a response because I had just really gotten into the case. And so I went out and talked with Mr. Potts, who was in the building. |
| Question: | Okay. So then at that point what was your understanding about whether there had been a settlement? |
| Answer: | There was no indication whatsoever that there was a settlement. |

¶47    The question, "how about it if we just settle the thing for $75,000," by the very words used, was an attempt by counsel for the Bank to see if his client could buy peace. It makes no difference if counsel referred to the issue of whether the matter had previously settled, or referred to the possibility of settling the case again. Rule 408, M.R.Evid., provides that counsel may, without fear of it being used against his client to show liability, broach the matter of settlement.

¶48    Again, this question was posed by counsel for the Bank, Kelly. At no time did he deny that he made the statement. At no time did any witness for the Bank deny that such question was asked of Potts' counsel. The purpose of this evidence cannot be impeachment, as there is nothing to impeach. And, as with the Order discussed above, the bias of Bank's counsel, Kelly, cannot be gainsaid. It is crystal clear that the English language phrase, "how about it if we just settle the thing for $75,000," is a statement made in an attempt to compromise, and is just as obviously prohibited by Rule 408,

M.R.Evid.

¶49 During its deliberations, the jury did send a note to the District Court asking for "a transcript of the 3/30/2000 meeting between Kelly, Patton [sic] and Green as testified to by Scott Green." Such transcript would have included the above testimony by Green. The requested transcript was not provided. However, we cannot conclude that it was the $75,000 Question that concerned the jury. Also, as neither the Orders nor the $75,000 Question are admissible evidence, and on any retrial they must be excluded, Potts suffered no prejudice by the District Court order precluding argument concerning them.

¶50 Nor was the exclusion of the Memorandum error. The Memorandum stated:

> The parties have not adequately explored the possibility of settlement or of conducting a mediation conference. With additional time, it is possible that the parties will be able to conduct a successful mediation which would eliminate the necessity of a trial or otherwise come to settlement terms.

¶51 This Memorandum was written and submitted to the District Court approximately a year after the previously scheduled trial had been vacated. The Memorandum was submitted to the District Court by Bank's new counsel for the sole purpose of advising the Court that settlement should be explored before a new trial date was set. This Memorandum simply called to the District Court's attention that the parties had not explored the possibility of settling the remaining controversies. Rule 408, M.R.Evid., is designed to prevent exactly what Potts desires to do in introducing this Memorandum, that is, use the fact that counsel thought settlement had not been adequately explored, and should be explored, to prove liability.

¶52 None of these statements (the Orders, the $75,000 Question, and the

15

Memorandum) rebut or impeach the testimony of the Bank's witnesses, as argued by Potts and mis-characterized by the dissent. They are each statements, by counsel, which directly relate to the possibility of settling issues between Potts and the Bank – any issues. The reason for, and the principle behind, Rule 408, M.R.Evid., is to insure that frank and open negotiations will take place without fear that what is said during these negotiations will be used against a party during a trial. The policy behind this purpose is that of favoring compromise and settlement of disputes. *Commission Comments*, Rule 408, M.R.Evid. Admitting either of the Orders, the $75,000 Question or the Memorandum into evidence would contravene the policy of encouraging compromises and settlements. *See DeTienne Assocs. Ltd. Partnership v. Mont. Rail Link, Inc.* (1994), 264 Mont. 16, 22, 869 P.2d 258, 262. If counsel jeopardizes his client's position by mentioning settlement to the court, or by asking opposing counsel if his client would take money to settle the case, not only does Rule 408, M.R.Evid., become totally meaningless, it becomes impossible to even begin settlement discussions.

¶53 The reasons settlement discussions were admitted into evidence in *Kiely Constr., L.L.C. v. City of Red Lodge*, 2002 MT 241, 312 Mont. 52, 57 P.3d 836; *In re Estate of DeCock* (1996), 278 Mont. 437, 925 P.2d 488 (overruled in part on other grounds by *In re Estate of Bradshaw*, 2001 MT 92, ¶ 16, 305 Mont. 178, ¶ 16, 24 P.3d 211, ¶ 16); *In re Estate of Stukey*, 2004 MT 279, 323 Mont. 241, 100 P.3d 114; and *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, 327 Mont. 146, 112 P.3d 1018, are not even close to being similar to those advanced by Potts for admission of the three statements under consideration here.

¶54 In *Kiely*, evidence of negotiation and an agreement between a sub-divider and the

16

City were offered and admitted for the purpose of showing the arbitrary and capricious nature of a City Council decision. *Kiely*, ¶ 95. Potts does not argue, and there is no evidence that any of the three statements under consideration prove the Bank acted arbitrarily or capriciously.

¶55 In *DeCock*, evidence of a settlement agreement was admitted to show that a witness would personally benefit if the defendants prevailed, and thus the witness was biased. *DeCock*, 278 Mont. at 448-49, 925 P.2d at 495. Potts does not argue that defense counsel would personally benefit if the Bank prevailed. While the Bank's lawyers were obviously biased, none of the statements in question tend to prove such bias, so *DeCock* is inapposite. The statements in question only show that settlement was mentioned by the Bank's lawyers.

¶56 In *Stukey*, which was a case tried to the court without a jury, a letter was admitted into evidence that referenced mediation which had previously resulted in an agreement. The trial court excluded from consideration any mediation-related communications. *Stukey*, ¶ 65. The district court did not consider the letter for the purpose of determining whether an agreement had previously been reached. Unlike this case, there was no contest that the parties had reached agreement. The letter was only considered as evidence of what amount the parties assumed the agreement was based on. *Stukey*, ¶ 68. In this case, Potts wishes to introduce discussions of settlement for the purpose of directly proving that there was no settlement, which is what is directly precluded by Rule 408, M.R.Evid. *Stukey*, ¶ 67.

¶57 The facts in *Jeld-Wen* differ the most from those presented here. In *Jeld-Wen*, a

settlement between a contractor and the plaintiffs was allowed into evidence, not to prove liability, but to illustrate bias on the part of, and to attack the credibility of, that same contractor who was called as a witness by the plaintiffs. *Jeld-Wen*, ¶ 20. Plaintiffs settled with this contractor and later called him as a witness to give his estimate of the amount of damages. The contractor gave an opinion that the damages were substantially more than he had previously estimated. *Jeld-Wen*, ¶¶ 10, 21. Thus, the settlement was allowed into evidence to show bias on the part of the expert witness and to impeach his evaluation of damages. *Jeld-Wen*, ¶ 21. As noted above, the facts presented here are not similar.

¶58 A case more analogous to the facts presented here is *VonLutzow v. Leppek*, 2003 MT 214, 317 Mont. 109, 75 P.3d 782. After prolonged monetary disagreements between them, VonLutzow sent a letter to Leppek asking him to pay her an amount she considered fair. *VonLutzow*, ¶ 10. The letter was admitted at trial despite an objection by VonLutzow based on Rule 408, M.R.Evid. *VonLutzow*, ¶¶ 11, 13. At trial, Leppek used this letter as proof supporting his version of the monetary disputes. *VonLutzow*, ¶ 22. This Court held that this letter did not fall within the impeachment exception in Rule 408, M.R.Evid., because Leppek offered into evidence an offer to compromise a claim that is disputed as to validity or amount to prove liability for or invalidity of the claim. *VonLutzow*, ¶ 23. This Court determined that admission of the letter constituted an abuse of discretion. *VonLutzow*, ¶ 24. Similarly, in the present case, Potts is seeking to tender the three statements to prove the invalidity of the Bank's claim. As in *VonLutzow*, the three statements are not admissible pursuant to Rule 408, M.R.Evid.

¶59 The District Court properly excluded argument on the Orders and the $75,000 Question, and properly excluded the Memorandum from evidence. Each constitutes no more than exploration of the possibility of compromise, which Potts attempts to introduce as evidence of liability. For good and obvious reasons, each is excluded by Rule 408, M.R.Evid.

¶60 Potts also claims that the Memorandum was a judicial admission. A judicial admission which binds a party must be "an unequivocal statement of fact" rather than a conclusion of law or the expression of an opinion. *Plath v. Schonrock*, 2003 MT 21, ¶ 49, 314 Mont. 101, ¶ 49, 64 P.3d 984, ¶ 49 (quoting *DeMars v. Carlstrom* (1997), 285 Mont. 334, 337, 948 P.2d 246, 249). Since the Memorandum could easily be interpreted to mean that the parties sought to explore the possibility of resettling the case after Potts allegedly reneged on the original settlement, it is not an unequivocal statement of fact and cannot be deemed a judicial admission.

ISSUE THREE

¶61 **Did the District Court err when it did not provide the jury with a transcript of the testimony of a witness?**

¶62 During its deliberations, the jury sent a note to the Court asking for a transcript of witness Scott Green's testimony concerning a meeting between him and other witnesses. The District Court declined to provide such transcript. Potts argues that the District Court violated § 25-7-405, MCA, when it refused such jury request. Section 25-7-405, MCA, provides:

> After the jury has retired for deliberation, if there be a disagreement among the jurors as to any part of the testimony or if they desire to be informed of any point of law arising in the cause, they may require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the parties or counsel. Such information must be given in writing or taken down by the stenographer.

¶63 Potts contends that the statute requires the Court to provide the requested transcript because the only rational reason for the request was juror disagreement. He supports his argument that there was juror disagreement with the affidavit of a juror obtained after the verdict. Potts argues that not providing the requested transcript prevented a fair trial and hampered the jury. He cites *Henrichs v. Todd* (1990), 245 Mont. 286, 800 P.2d 710, in support of his argument. Potts concludes his argument by urging us to extend our reasoning regarding juror misconduct in *Allers v. Riley* (1995), 273 Mont. 1, 901 P.2d 600, to encompass what he terms misconduct on the part of the District Court in denying the jury's request.

¶64 The present case is distinguishable from *Henrichs*. The jury in *Henrichs* was not allowed to ask a question concerning a point of law, 245 Mont. at 288, 800 P.2d at 712, which is specifically covered by § 25-7-405, MCA. The jury here was not concerned with a point of law.

¶65 The written note from the jury in this case gave no reason for the request. It does not indicate that the jurors disagreed as to the testimony in question, a fact noted by the District Court in its decision not to provide the transcript. We do not agree with Potts' contention that the only rational reason for the request was juror disagreement. The request could have been made for any number of reasons, including but not limited to a

20

simple desire to review the testimony, or the desire of one or more jurors to emphasize a point or to make an argument to his or her colleagues.

¶66    The only indication of juror disagreement is the affidavit of a juror later submitted by Potts, which claims that the jury asked for the transcript because of disagreement regarding Scott Green's testimony.   Rule 606(b), M.R.Evid., sets forth the only three circumstances under which a juror affidavit can be considered:

> (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

We have described the rationale for this rule, in part, as follows:

> Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath. . . .

*Sandman v. Farmers Ins. Exch.*, 1998 MT 286, ¶ 29, 291 Mont. 456, ¶ 29, 969 P.2d 277, ¶ 29 (quoting *Boyd v. State Med. Oxygen & Supply, Inc.* (1990), 246 Mont. 247, 252, 805 P.2d 1282, 1286).  Given this rationale, we have long held that the exceptions under Rule 606(b), M.R.Evid., are exclusive and narrowly construed.  *Sandman*, ¶ 29.  Since the affidavit does not fall under any of the Rule 606(b), M.R.Evid., exceptions, it cannot be used to impeach the verdict.  We disregard the affidavit.

¶67    We have consistently held that the decision to provide testimony to the jury during deliberations, or to refuse a request by the jury to do so, lies within the sound discretion of the trial court.  *State v. Henrich* (1994), 268 Mont. 258, 266, 886 P.2d 402, 407; *State*

*v. Evans* (1993), 261 Mont. 508, 511, 862 P.2d 417, 418; *State v. Mayes* (1992), 251 Mont. 358, 374, 825 P.2d 1196, 1206; *State v. Harris* (1991), 247 Mont. 405, 417, 808 P.2d 453, 459-60; *State v. Ulstad* (1990), 246 Mont. 102, 103-04, 802 P.2d 1260, 1261-62. We will not abandon this standard and extend our cases regarding juror misconduct to hold that a district court was somehow guilty of misconduct because it denied a jury's request for a transcript of testimony.

¶68   In this instance, the District Court carefully considered whether or not to provide a transcript of the requested testimony. It found that the testimony concerned a minor point, that it was of questionable relevance, that it concerned settlement offers, and that it would unduly emphasize specific testimony. The District Court was correct that providing more testimony than necessary to address a jury request can cause undue emphasis of the testimony of a single witness and, when such undue emphasis is given, we have held such is an abuse of discretion. *State v. Graves* (1995), 272 Mont. 451, 462, 901 P.2d 549, 556. Further, the record fairly supports the additional reasons articulated by the District Court for denying the jury's request. The District Court did not abuse its discretion when it did not provide the jury with the requested transcript.

ISSUE FOUR

¶69   **Must a new trial be granted because the Bank's counsel made a remark about a witness to the judge?**

¶70   Potts argues that the District Court and the Bank's trial counsel had an improper *ex parte* communication regarding a witness called by Potts. Potts' counsel heard the Bank's counsel tell the District Court that the witness "hates Stockman Bank."

22

According to Potts, this alleged *ex parte* communication denied him a fair trial.

¶71 An *ex parte* communication is defined as "[a] communication between counsel and the court when opposing counsel is not present." *Black's Law Dictionary* (8th ed. 2004). Since Potts' counsel heard the statement, she obviously was present when it was made. Thus, it is questionable whether the statement was *ex parte*. Regardless of whether the statement was *ex parte*, the record makes clear that the District Court made no decision concerning the witness' testimony based on the alleged *ex parte* statement, which was also not communicated to the jury. As the statement had no effect on the outcome of the trial, we will not grant a new trial on this basis.

## ISSUE FIVE

¶72 **Did the District Court err because it refused to allow Potts' former spouse to testify?**

¶73 Counsel for Potts issued a subpoena to his former spouse and called her to testify during the trial. When the witness appeared, counsel for the Bank objected to her testimony at an unrecorded bench conference. The District Court later explained on the record that the Bank's counsel objected because the witness had told him that counsel for Potts said she was not to talk to the Bank's counsel. At that time the District Court excluded the witness. Later, after the jury had been dismissed for the day, the District Court and counsel fully discussed the matter on the record for nearly a half hour. The result of this conference was that the District Court determined the testimony of the witness would likely have been cumulative and of questionable value, but nevertheless Potts could recall her.

¶74    As a result of the discussion between the District Court and counsel, the District Court held that there had been a misunderstanding between counsel for both parties and the witness, that neither parties' counsel was at fault for the witness' failure to speak with the Bank's counsel, that if the Bank's counsel was given an opportunity to speak with her she would be allowed to testify, and that she could be recalled either the next day or the next week. Potts' counsel elected not to recall her.

¶75    While the District Court did at first preclude Potts' former spouse from testifying, upon reconsideration, and after hearing a complete discussion, the District Judge stated that he would allow the witness to testify. When Potts' counsel declined to again call the witness she waived any objection.

ISSUE SIX

¶76    **Did the District Court err when it instructed the jury concerning admitted facts?**

¶77    The District Court read its instruction No. 6 to the jury over Potts' objection. This instruction listed 35 facts taken from Potts' responses to Requests for Admission. Potts argues on appeal that the stated facts were not the law of the case as required by Rule 51, M.R.Civ.P., they improperly emphasized certain evidence, they caused prejudice as they were taken out of context, many of the facts were irrelevant, and the District Court impliedly condoned the facts by reading them to the jury. Potts also contends that this jury instruction improperly decided questions of fact in violation of § 25-7-103, MCA, which provides:

24

All questions of fact, where the trial is by jury, other than those mentioned in 25-7-102 are to be decided by the jury, and all evidence thereon is to be addressed to them, except when otherwise provided by this code.

¶78   Rule 36(b), M.R.Civ.P., concerning requests for admissions, reads in part:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

The admissions made by Potts and included in jury instruction No. 6 were already established as facts, and § 25-7-103, MCA, does not apply.

¶79   "An instruction is not objectionable because it assumes an uncontroverted fact, or one which is admitted or conclusively shown by the evidence." *Bohrer v. Clark* (1978), 180 Mont. 233, 246, 590 P.2d 117, 124. The instruction did not misinform the jury. It listed facts that were conclusively established pursuant to Rule 36(b), M.R.Civ.P.

¶80   Potts has only advanced his unsupported assertions that he was prejudiced by this jury instruction. A showing of prejudice is required to reverse a verdict because of an alleged improper instruction. *Henricksen v. State*, 2004 MT 20, ¶ 75, 319 Mont. 307, ¶ 75, 84 P.3d 38, ¶ 75.

¶81   Potts goes on to contend that instruction No. 6 must have confused the jury. However, his counsel explained the context of the listed facts to the jury during closing argument and thereby prevented confusion.

¶82   We determine, after a review of the record, that giving instruction No. 6 was within the leeway granted to the District Court in giving instructions to a jury, and was not an abuse of discretion. *Payne*, ¶ 14.

¶83    **Did the District Court err by instructing the jury how to decide the case?**

¶84    Potts, using a shotgun approach, seeks a new trial arguing that the District Court's instructions, in effect, instructed the jury to return a verdict against him. However, he complains only about instructions No. 8 and No. 12.

¶85    Relating to instruction No. 8, Potts says that it somehow told the jury to return a verdict for the Bank because a letter written by the Bank's attorney to Potts' attorney referenced two contingencies and the instruction referenced only one. However, Potts did not object to this instruction. Therefore, Potts waived the right to object to instruction No. 8 on appeal. *Kneeland v. Luzenac America, Inc.*, 1998 MT 136, ¶ 43, 289 Mont. 201, ¶ 43, 961 P.2d 725, ¶ 43.

¶86    In instruction No. 12, the District Court instructed the jury that it is not necessary for the parties to attend a settlement meeting or to sign a document to render a settlement agreement enforceable. Potts argues that instruction No. 12 was not an accurate statement of the law in this case, because it created an issue of fact, unsupported by evidence, tending to mislead or divert the minds of the jurors from the factual issues. Potts asserts that the letter of January 28, 2000, relied on by the Bank as evidence that a settlement had been reached, specifically stated that the settlement agreement was to be in writing and a release was to be executed. Thus, Potts contends that by instructing the jury that a settlement agreement need not be in writing, the District Court essentially told the jury how to decide the case.

¶87    The letter of January 28, 2000, mentions that the parties were to "execute mutual

releases of all claims and a stipulation for dismissal of the current litigation, with prejudice." Instruction No. 12 did not instruct the jury how to decide the case; it merely stated that a writing was not legally necessary to reach an agreement. Instruction No. 12 is an accurate statement of the law. *Lockhead v. Weinstein*, 2003 MT 360, ¶ 14, 319 Mont. 62, ¶ 14, 81 P.3d 1284, ¶ 14. That is, the law does not require that a writing be signed before a settlement agreement is binding. The instruction left open the question of fact, to be decided by the jury, whether a settlement agreement had been reached. Potts argued to the jury that no agreement to settle had been reached because no releases were signed. That is, the letter called for the execution of writings before a final settlement was reached. This could be a reasonable interpretation of the letter. A reasonable interpretation of the letter could also be that the execution of releases was the last of multiple acts to be performed in carrying out a settlement that had already been agreed to. This argument was advanced by the Bank. The jury chose to accept the Bank's position. In the context of this case, the District Court did not err in giving instruction No. 12, stating that the law did not require a writing to reach a settlement, and leaving to the jury what the letter in question meant.

CONCLUSION

¶88    The judgment in favor of Stockman Bank of Montana and against Rick Potts, and the order of the District Court of the Thirteenth Judicial District, Yellowstone County, denying Potts' motion for a new trial, are affirmed.


/S/ JOHN WARNER

27

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice James C. Nelson dissents.

¶89    I dissent as to Issue 2. I would reverse and remand for a new trial. Therefore, I decline to reach the other issues addressed in the Court's Opinion.

¶90    The Court starts its discussion of Issue 2 with the statement that the judgment roll, transcript and brief are tortured and confused. Under that expedient guise the Court then proceeds to ignore our mandate on remand from *Stockman Bank of Montana v. Potts,* 2002 MT 178, 311 Mont. 12, 52 P.3d 920 (*Stockman I*), rewrite the record and the briefs, bail out the trial court from its "confusion" and erroneous rulings, absolve the Bank from its own statements, and ignore and rewrite our jurisprudence interpreting Rule 408, M.R.Evid. To say that we have exceeded our function and duties as an appellate court would, without reservation, constitute gross understatement.

¶91    It is not our function to re-try the case for the lower court, to act as revisionists of the record and then to re-brief the issues on appeal for the attorneys. If the record, briefs and judgment roll are as confused and tortured as our Opinion makes them out to be, then we should send the case back to the trial court and to the attorneys for a new trial with an unequivocal admonition that they do their respective jobs properly, to the end that *both* litigants get a fair trial.

28

¶92     Instead of trying, *sua sponte*, to make a silk purse out of a sow's ear, this Court would be well advised to simply start with the actual law of the case set out in *Stockman I*—conveniently ignored in the Court's effort to spin the trial court proceedings to its own liking.

¶93     On remand under *Stockman I,* one of the issues that the jury was to decide was whether there actually was a settlement between Potts and the Bank on January 28, 2000. Indeed, we specifically reversed the District Court's summary judgment in favor of the Bank on this very issue in *Stockman I*, and we remanded for trial. *Stockman I*, ¶ 27. We stated: "We conclude that the 1/28/00 letter when considered in combination with the parties' other correspondence, does create an ambiguity regarding whether their settlement was contingent on alternate financing." *Stockman I*, ¶ 23.

¶94     The Court completely ignores this command; in fact, it does not even mention the January 28, 2000 letter from the Bank's (then) counsel to Potts' counsel which created the ambiguity which was central to why we remanded the case. The primary issue to be decided by the fact-finder on remand was what the parties' intentions as regards settlement were as of January 28, 2000, *Stockman I,* ¶ 26, not, as the Court now seems to believe, whether there were attempts to settle the case after that date. The question presented on remand and our direction to the trial court was simple and straightforward: "Was the case settled at or prior to January 28, 2000? The Jury is to decide that question of fact." Accordingly, any evidence relevant to that issue was fair game at trial; if the Bank and its new counsel made statements after January 28, 2000, and before the trial reflecting that the case was still active—i.e., that there had been no settlement at or prior

to January 28, 2000—then that was evidence relevant to the trial of the issue remanded. The Court unwittingly concedes this point when at ¶ 52, it states (in reference to the $75,000 Question and the Memorandum) that "[t]hey are each statements, by counsel [for the Bank], which directly relate to the *possibility of settling* issues between Potts and the Bank—any issues." (Emphasis added.) And there you have it—the Bank's new attorneys taking the position that the case had not settled at or prior to January 28, 2000. Why would the jury not be entitled to hear this evidence? Why would counsel not be entitled to argue this evidence to the jury? Why would Potts not be prejudiced if the jury was denied the opportunity to hear either? It was the very evidence he needed to prove his case and to defend against the Bank's opposing position.

¶95    Contrary to the Court's unfathomable reasoning, this evidence was not evidence of settlement or compromise prohibited under Rule 408; it was evidence that was offered to prove the issue that this Court remanded for retrial under *Stockman I*. If the Bank wanted to finally settle Potts' outstanding claims pending appeal on *Stockman I*, or subsequent to our decision and before retrial, there was nothing stopping them from doing that. But the Bank cannot take the position post-January 28, 2000—"Mr. Potts let's settle the case" and then, subsequently, come into court and tell the court and fact-finder, "Hey, judge and jury, the case was settled on January 28, 2000." The Bank wants to have it both ways:  the case was settled on January 28, 2000, so no offers thereafter—sincere or otherwise—should be admissible; *or* the case was not settled, in which event the Bank was untruthful with the District Court and the jury in taking the position that the matter had been settled.

30

¶96    Indeed, what is apparent is that the Bank's new attorneys knew for a fact that Potts' claims had not been settled at or prior to January 28, 2000—the statements and documents at issue prove that without question. At trial, the Bank wants, on the one hand, to convince the jury that the case had settled as of January 28, 2000. Indeed, its witnesses were allowed to testify that the January 28, 2000 letter proved that settlement was effected on that date. On the other hand, the Bank wants to prohibit the jury from hearing evidence and argument from the lips and pens of its own attorneys that disprove that very position. And this Court falls for that legerdemain hook, line and sinker.

¶97    And to confuse things even more, according to the Court's reconstitution of the record, testimony on the $75,000 Question was admitted without objection, but then the trial judge reversed himself—presumably meaning that the evidence was no longer admitted. Notwithstanding, nothing in the Court's Opinion would lead one to believe that the trial court actually instructed the jury not to consider the evidence. Given that, it was obviously error to prohibit Potts' counsel from arguing evidence to the jury that was still technically before it. It would be fascinating to see what authority the Court could create for the proposition that counsel is prohibited from arguing to the jury evidence that the fact-finder has not been instructed to disregard.

¶98    Moreover, the Orders, Memorandum and $75,000 Question are public documents. Why would the jury not be entitled to examine in the jury room what any person could have simply obtained from the clerk of the court? The Bank can hardly claim that the information in these documents is private or secret or divulges a position that should be

31

kept from the fact-finder when it was the Bank that put these documents and this information into the public domain.

¶99 And then there's the matter of Rule 408. Not only did the District Court misapply Rule 408, but in doing so it deprived Potts of his ability to present evidence on the very issue this Court directed the jury to decide. In affirming the trial judge's ruling, we have, likewise, misapplied Rule 408 and have ignored our own recent case law. As noted above, Potts' evidence was not being proffered as evidence of an offer of settlement or compromise. It was, to the contrary, being offered: (a) as proof on the issue which this Court remanded be tried to the jury in *Stockman I*—i.e., whether the case had settled at or prior to January 28, 2000, and (b) to defend against the Bank's position that the case had so settled. The Orders, $75,000 Question and Memorandum absolutely contradicted the Bank's position at trial and were unquestionably offered to impeach its position and that of its witnesses. If, indeed, as the Court seems to think, the Bank and Potts were trying to settle the case after January 28, 2000, then it logically follows that the case had not, in fact, been settled before or on that date—again the precise issue that the jury was to decide on remand.

¶100 The fact that Rule 408 evidence can be prohibited for one purpose but be admitted for another seems completely lost in the Court's tunnel view of this case. The plain language of Rule 408 states that the rule

> does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a

contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Moreover, this proposition is a firmly and well-entrenched principle of law in our jurisprudence.

¶101   In *Kaeding v. W.R. Grace & Co.—Conn.*, 1998 MT 160, ¶ 30, 289 Mont. 343, ¶ 30, 961 P.2d 1256, ¶ 30, this Court made clear that, under the plain language of Rule 408, the Rule "only excludes evidence that is being offered to prove liability or the validity of a claim or amount."  By its own terms, Rule 408:

> [D]oes not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.  This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay . . . .

¶102   Here, Potts was not attempting to offer evidence of a compromise in settlement of a disputed liability or to prove the invalidity of or amount of a claim—which is *all* that Rule 408 prohibits.  Rather, Potts was attempting to offer evidence that the settlement never occurred in the first place—precisely the issue we directed the jury resolve on remand after *Stockman I.*  Potts' evidence was offered to impeach the testimony of the Bank's attorney, Pat Kelly, and its president, Stan Markuson, that the case had settled. Potts' evidence was offered to show that they knew that the case had *not* settled—i.e., the evidence went to the credibility of both Kelly and Markuson.  It was also offered to show that the Bank's new attorneys knew that the case had not settled on or before January 28, 2000.  Potts' evidence was offered to rebut the evidence offered by the Bank in support

of its claim that the case had settled on January 28, 2000. The Court's Opinion completely misses the point of the offered testimony.

¶103 It is bad enough that the trial court allowed the Bank to put on its evidence, in spite of Rule 408, yet, because of the Rule, it denied Potts the ability to put on his defense. Worse yet, we condone this ruling in the face of our own recent decisions.

¶104 In *Tripp v. Jeld-Wen, Inc.,* 2005 MT 121, 327 Mont. 146, 112 P.3d 1018, we allowed the defendant to place before the jury not only evidence of the Plaintiffs' settlement with a former defendant in the case, but, as well, the amount of the settlement. Reciting the general prohibition of Rule 408—that the rule "does not allow for evidence of settlements in order to prove or disprove liability"—we focused on the Rule's exception. That is, we recognized that "the witness was not asked about the settlement in order to prove any issues of liability, but to illustrate the bias of the witness. This is permissible under Rule 408." *Jeld-Wen*, ¶ 20. Indeed, we stated that this testimony was proper because it was "pertinent to the credibility of the witness." *Jeld-Wen,* ¶ 21. In contradictory fashion, we held that testimony of the settlement and amount thereof was pertinent to the credibility of the witness for the plaintiff in *Jeld-Wen*, but it is not pertinent to the credibility of the Bank's witnesses here.

¶105 Similarly, in *Estate of DeCock v. DeCock* (1996), 278 Mont. 437, 448, 925 P.2d 488, 494-95, *overruled on other grounds by In re Estate of Bradshaw*, 2001 MT 92, 305 Mont. 178, 24 P.3d 211, we affirmed the trial court's entry of an order *in limine* preventing the admission of the settlement agreement itself, with the exception that

*any witness that was a party to the agreement could be questioned as to the existence of the agreement and as to the fact that the witness might receive a greater share of the estate if one party prevailed over the other in order to attack the credibility of the witness by showing a motive for bias or prejudice.* [Emphasis added.]

Again, we relied on the exception to Rule 408, permitting the use of settlement agreements to prove the bias of prejudice of a witness. *DeCock*, 278 Mont. at 448, 925 P.2d at 494-95.

¶106  Likewise, in *In re Estate of Stukey,* 2004 MT 279, ¶ 68, 323 Mont. 241, ¶ 68, 100 P.3d 114, ¶ 68, we affirmed the admission of a letter written during settlement negotiations by counsel for one of the parties "as evidence that the negotiating parties were indeed negotiating under the assumption that [the conservator's] Final Inventory represented the amount of the estate to be divided." Relying on *Kaeding,* ¶ 30, referred to above, we again held that this evidence did not fall under the prohibition of Rule 408, but rather, was admissible for proving bias and prejudice of the witness. *Stukey*, ¶¶ 66-68.

¶107  In like manner, our decision in *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 95, 312 Mont. 52, ¶ 95, 57 P.3d 836, ¶ 95, stressed that Rule 408 "is not a complete bar on evidence concerning offers of compromise . . . [and that] [t]he rule specifically 'does not require exclusion when the evidence is offered for another purpose . . . .' " With that in mind, we affirmed, as falling within the exception of the Rule, the District Court's determination to allow evidence of settlement negotiations "to demonstrate the arbitrary and capricious nature of the decision of Red Lodge to adopt the [Subdivision Improvement Agreement] subject to seven new conditions." *Kiely*, ¶ 95.

¶108 Our interpretation of Rule 408 in the case *sub judice* is completely at odds with our interpretation of that Rule in *Jeld-Wen*, *DeCock*, *Stukey*, and *Kiely*. In the first three cases, we permitted evidence of settlement negotiations to demonstrate the bias and prejudice of witnesses; yet, we disallow Potts' offered testimony for the same purpose here. In *DeCock,* we allowed evidence of settlement negotiations as to the existence of the settlement agreement; yet, we deny Potts the ability to use his evidence for that same purpose here. And, in *Kiely,* we allowed evidence of settlement negotiations when offered for another purpose; yet, here, we will not even allow Potts to use his evidence to demonstrate that no settlement was reached. The Court's decision in this case makes no sense; there is no principled basis on which to distinguish *Jeld-Wen*, *DeCock*, *Stukey*, and *Kiely* from our Opinion in the case at bar.

¶109 The simple fact is these cases, as well as the plain language of the Rule, all stand for the basic proposition that Rule 408 evidence can be prohibited for one purpose, but be admitted for another.

¶110 Our entire purpose in remanding this case for retrial in *Stockman I* has been frustrated (Potts has been denied a fair trial) and the Court has now established a precedent that will have judges and trial lawyers scratching their heads for years.

¶111 I would reverse and remand this case for a new trial. I dissent from our failure to do so.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray joins in the dissent of Justice James C. Nelson.

/S/ KARLA M. GRAY

36

Justice Patricia O. Cotter dissents.

¶112   I concur in Justice Nelson's analysis of the Court's misapplication of Rule 408.

¶113   As the Court notes at ¶ 16, the Bank amended its Complaint in 2001 to allege that the dispute with Potts had settled.  As the Court further notes, the jury was asked to decide this very question.  The Bank offered evidence to establish the settlement, but Potts was precluded from offering substantive documentary evidence to refute it.

¶114   The Court's error becomes obvious from the very language it employs at ¶ 18, where the Court says in its Discussion of Issue 1:  "It was incumbent on the Bank to affirmatively prove its claim that all issues between it and Potts had settled."  Precisely.  The converse of this statement is equally, simplistically true:  It was incumbent on Potts to establish that the issues between them had *not* been resolved through settlement.  Potts, like any other litigant, is entitled to prove his claim or defense by direct or circumstantial evidence.  Such evidence inarguably includes statements and writings from the opposing party that tend to refute its claim.  This was the purpose of Potts' offerings:  to refute the Bank's claim that the case was settled.  It is mystifying to me how we could conclude that the Bank may offer proof that a settlement has occurred, but that Potts is precluded from offering his best evidence to refute that claim by the operation of Rule 408.  Our decision is wrong.  I too would reverse and remand for a new trial.

/S/ PATRICIA COTTER