No. 81-29

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

WESTERN ENERGY COMPANY,

Plaintiff and Respondent,

BURLINGTON NORTHERN INC.,

Plaintiff-Intervenor and Respondent,

vs.

GENIE LAND COMPANY,

Defendant and Appellant.

---

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud
Honorable Arthur B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Patten and Renz, Billings, Montana
James A. Patten argued, Billings, Montana

For Respondent:

Moulton, Bellingham, Longo & Mather, Billings, Montana
William Bellingham argued, Billings, Montana
R. Blair Strong, Butte, Montana

For Intervenor:

Gary H. Peterson, Billings, Montana

---

Submitted: September 18, 1981

Decided: November 5, 1981

Filed: NOV 5 - 1981

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Genie Land Company appeals from a judgment in the District Court, Sixteenth District, Rosebud County, in favor of Western Energy Company and Burlington Northern, Inc., declaring the rights of the parties under mineral reservations contained in warranty deeds, and permanently enjoining Genie Land from interfering with Western Energy's activities in procuring a resource inventory of the lands involved. Genie Land also appeals from the denial of a trial by jury by the District Court.

Genie Land is the present owner of, and successor in interest to the surface of lands purchased in 1945 and 1947 from Northern Pacific Railway, predecessor in interest to Burlington Northern. The deeds are subject to the following mineral reservation:

"excepting and reserving unto the grantor, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land, together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same; but the grantor, its successors and assigns, shall pay to the grantee or to its successors or assigns, the market value at the time mining operations are commenced of such portion of the surface as may be used for such operations or injured thereby, including any improvements thereon . . ."

Western Energy acquired the right to mine the coal underlying Genie's surface from the Montana Power Company, which had leased the coal from the Northern Pacific Railway in 1966.

The District Court action was brought by Western Energy to enjoin Genie Land from preventing Western Energy's resource inventory operations upon the lands involved and to obtain a declaratory judgment adjudicating the respective rights

and duties of Western Energy and Genie Land under the coal lease and mineral reservations involved. Burlington Northern joined in the District Court action as a plaintiff intervenor.

The District Court judgment granted Western Energy's request for injunctive relief, allowed Western Energy access upon the lands in order to conduct the proposed resource inventory operations and ruled that the mineral reservations gave the mineral owner and its lessee the right and authority to conduct the resource inventory operations.

The principal issue involved is whether the mineral reservation set forth above gives Western Energy the right to conduct its resource inventory operations on Genie's surface. These operations are data-gathering in nature and provide a would-be surface mine operator with the data required to be included in its surface mine permit application. The resource inventory operations contemplated by Western Energy include: (1) soil surveys, (2) vegetation surveys, (3) wildlife surveys, (4) hydrological surveys, (5) archeological surveys, (6) topographical mapping surveys, (7) air quality monitoring, and (8) coal and overburden analysis.

Genie contends that the resource inventory operations will entail tests of origins of the surface, a one year study of the wildlife on the surface, a survey of the wells, springs and surface water, a review of the surface for any archeological sites, placing and physically occupying survey monuments thereon, establishing an air quality monitoring station which must be attended every three days by Western Energy personnel, drilling several wells, and various multiple entries onto Genie's surface by Western Energy agents and personnel. Western Energy admits the possibility of one year's presence on Genie's surface; Genie contends the presence on its surface could be up to two years.

-3-

Genie concedes that under the mineral reservation, Western Energy could enter Genie's surface to drill test and core holes to determine coal and ore deposits, and the extent thereof.

Western Energy concedes that the compilation of the data to be gathered by its proposed resource/operations is necessary for inclusion in Western Energy's application for a permit to mine the coal under Genie's surface. Our statutes and the administrative regulations thereunder, requiring much of the data for inclusion in a strip mining permit application, were first adopted in 1973. Section 82-4-222, MCA. In 1975, an additional statutory requirement was adopted that when the surface owner is not the owner of the mineral estate proposed to be mined by strip mining operations, the application for a strip mining permit must include the written consent or waiver by the owners of the surface lands involved to enter and commence strip mining operations on the land, except that this condition does not apply when the mineral estate is owned by the federal government in fee or in trust for an Indian tribe. Section 82-4-224, MCA.

The principal point urged by Genie in this appeal is that the mineral reservation above does not give Western Energy the authority to conduct its resource inventory operations on the surface owned by Genie.

In support of that point, Genie contends that resource inventory operations are not included in the plain language of the mineral reservation; that the proposed resource inventory operation would be burdensome upon the surface estate; that the right to "the use of such of the surface as may be necessary for exploring for" minerals is limited to mean what is necessary to discover ore and its extent; that

resource inventory operations constitute neither "mining" nor "extracting" minerals; that resource inventory operations are excluded by the maxim, "the express mention of one thing implies the exclusion of another;" and that the need for resource inventory operations, established by the Montana statutes after the execution of the warranty deeds here in question, does not excuse a legal wrong to be suffered by Genie.

It is further contended by Genie that the proposed resource inventory operations are not reasonable because Western Energy has not obtained, and will never obtain, the consent of Genie to conduct strip mining operations, which it contends is the key to all mining and premining purposes; that exploration is futile because of the lack of consent; that here there can be no easement by implication or necessity as a reasonable interpretation of the mineral reservations; that public policy protects the surface owner as evidenced by the adoption of section 82-4-224, MCA, supra; that Western Energy does not intend to conduct mining operations on Genie's surface at this time; and that resource inventory operations were not within the intention of the parties at the time of the conveyances containing the mineral reservations.

Finally, Genie contends that it is entitled to a jury trial to resolve fact issues arising out of the mineral reservations.

Western Energy and Burlington Northern respond that consent of the surface owner is not an issue at this stage of the proceedings since a formal application for a strip mining permit has not been made to State authorities; that the proposed resource inventory operations constitute a reasonable burden upon the surface owners of coal lands; that strip mining was conducted at the time of the deeds of

conveyance here in question; that resource inventory operations are a reasonable use of the surface under the mineral reservations; that resource inventory operations are necessarily implied in the mineral reservations contained in the deeds of conveyance; and that the maxim "the express mention of one thing implies the exclusion of another" does not apply here. Western Energy and Burlington Northern further contend that no jury trial is required of the issues relating to the right of entry for the purpose of resource inventory operations.

Our resolution of this controversy is based upon our conclusion that the proposed resource inventory operations are necessarily implied in the language reserving the minerals, including coal, "together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same . . ." We also conclude that strip mining was within the contemplation of the parties at the time of the deeds of conveyance containing the mineral reservations because at that time Northern Pacific Railway Company was conducting coal strip mining operations within relatively short distances from the lands there conveyed. See, 54 Am.Jur.2d 389, 390, Mines and Minerals, § 210.

Three cases applying Montana law have established that a reasonable use of the surface by the owner of a severed mineral estate for the enjoyment of the mineral reservation may be implied from the terms of the mineral reservation, though not expressly stated therein. In Hurley v. Northern Pacific Railway Company (1969), 153 Mont. 199, 455 P.2d 321, (reversed on other grounds) this Court affirmed that a mineral owner had the right to reasonable use of the surface area under mineral reservations similar to the one here involved. We quoted from California authority to the effect:

-6-

"So far as duties are concerned in the instant case, it is '. . . well-settled that the owner of the oil and mineral estate has a right to enter upon the surface of the property and make such use thereof as is reasonably required for the enjoyment of his estate therein . . .' (citing Wall v. Shell Oil Company (1962), 209 Cal.App.2d 504, 25 Cal.Rptr. 908, 911.)

"'If a particular facility is necessary and convenient to the operations of the oil and mineral owner, it may be placed anywhere upon the surface area in which he has the right of user, so long as such placement is reasonable under prevailing conditions and even though such placement in particular instances may work a hardship on the surface owner.'" 153 Mont. at 202, 455 P.2d at 323, citing Wall, supra, at 915.

In Russell v. Texas Company (9th Cir. 1956), 238 F.2d 636, 644, the court of appeals affirmed a Montana federal district court judgment that a mineral reservation similar to the one at bar entitled the owner of the mineral rights to take from the land and use that amount of water reasonably necessary for the exploitation of the mineral rights as an incident to the mineral ownership.

In Northern Cheyenne Tribe v. Hollowbreast (D. Mont. 1972), 349 F.Supp. 1302, 1310, rev'd on other grounds sub nom. Northern Cheyenne Tribe v. Northern Cheyenne, etc., 505 F.2d 268 (9th Cir. 1974), rev'd on other grounds 425 U.S. 649, 96 S.Ct. 1793, 48 L.Ed.2d 274 (1976), the District Court recognized the right of the owner of the mineral estate or its lessee to enter and use the surface for exploration, recovery and development of the minerals as may be reasonably necessary.

We find no Montana cases, nor have we been cited to any, that contravene these statements relating to the implied rights of the owner of a severed mineral estate to the reasonable enjoyment of his ownership. This authority overcomes Genie's contention that the plain language of the reservation must include the right to resource inventory operations, or else such rights are limited to the means

necessary to discover ore and its extent. It is obvious from the cases that a mineral reservation carries with it implied rights of use of the surface which are not necessarily "exploring," "mining," or "extracting," but may be indirectly related to those activities.

We turn therefore to Genie's contention that, in any event, the resource inventory operations are not a reasonable use of the surface under the implied rights contained in the mineral reservation.

First, we do not find that the lack of Genie's consent now, and the probable lack of its consent in the future, to any application for a strip mining permit by Western Energy is an issue at this time. Under the language of the mineral reservations, Genie's consent is not necessary to the right of Burlington Northern, as the owner, and Western Energy as its lessee, to explore for coal. Indeed, Genie admits that Western Energy has the right to enter upon Genie's lands for the purpose of drilling test or core holes to determine the extent of the coal deposits. The question becomes whether it is a reasonable implied right for Western Energy additionally to undertake the compilation of the data required under regulations for a strip mining permit.

Admittedly, there has been a broad expansion of regulatory demands in connection with the strip mining of coal in Montana. The adoption of laws by the legislature to protect the environment, and the interests of surface owners in would-be or actual strip mining operations, have complicated the judicial task of determining mutual rights under mineral reservations such as these. Nor has Montana been alone in expanding its law and regulations to meet these concerns. Federal regulations with respect to federal applications for

surface mining permits on federal lands require comparable information to the Montana regulations. 30 C.F.R. § 779. Additionally, the federal regulations with respect to severed mineral estates require that the application for a surface mining permit on federal lands include a copy of the surface owner's consent, or a copy of the document of conveyance that expressly granted or reserved the right to extract the coal by surface mining methods; or if not expressly granted, documentation that under the applicable state law, the applicant has legal authority to extract by surface mining. 30 C.F.R. § 778.15.

Although strip mining was known at the time of the deeds of conveyance here in question, and indeed was taking place within a short distance of the lands conveyed, it must be conceded on all sides that the development of environmental protection laws and regulations relating to strip mining have occurred only in the last decade. Does this mean that under mineral reservations made in 1945 and 1947, the rights of the mineral owners are restricted, as to exploration and mining, to such implied rights as were in existence at the time of the deeds of conveyance? We think not. We agree with the holding in Oakwood Smokeless Coal Corporation v. Meadows (Va. 1945), 34 S.E.2d 392, 395, that the owner of a severed mineral interest is not limited to such appliances and applications as were in existence when the mineral grant or reservation was made, but that pace may be kept with the progress of society and modern invention. It was certainly the understanding of the parties at the time of the deeds of conveyance that Northern Pacific Railway Company withheld the mineral ownership, and reserved the right to do what was necessary to extract the minerals. For us to hold

-9-

otherwise with respect to such implied rights, in the light of newer regulatory adoptions would be to put the mineral estate beyond the reach of its owner. In justice, that cannot be.

Nor do we find the extent of the burden upon the servient estate unreasonable, particularly in view of the language in the mineral reservation which assures the surface owners the market value, at the commencement of the operations of the premises, used for such purposes or injured thereby. It is clear that the adoption of the regulations by the state for the protection of the environment is a reasonable exercise of its police power. The necessity for mine operators to meet those requirements in exploring for or extracting minerals is accordingly a reasonable use of the surface for the purpose of mining operations.

As to Genie's claim that it was entitled to a jury trial in this cause, there are no disputed issues of fact that require a jury trial. The issuance of the injunction is in any event, an equitable action. Federal Land Bank of Spokane v. Myhre (1940), 110 Mont. 416, 422, 101 P.2d 1017, 1020. Genie is not entitled to a jury trial of any issues in this cause.

We emphasize that we limit this decision to the issues directly involved in this case, that is, the right of the mineral owner to conduct resource inventory operations as a part of the right to explore for minerals under the reservation, looking toward eventual compliance with regulations relating to a mining permit.

The judgment of the District Court is affirmed. This cause is remanded to the District Court for further proceedings with respect to damages and such other issues as are not

disposed of here.  We do not foreclose a jury trial with respect to such damages.

_____
                Justice

We concur:

_____

_____

_____
                Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion.

In my opinion this case does not involve interpretation of the deed's mineral reservation. No reasonable construction could reach a result whereby "resource inventories" are included within the language "exploring for" minerals. The right to enter to compile resource inventories must exist independent of the right to enter for exploration and must depend upon and be incidental to a right to mine. The majority correctly could imply reservation if there was a right to strip-mine.

The law is clear. The majority correctly notes: "In 1975, an additional statutory requirement was adopted that when the surface owner is not the owner of the mineral estate proposed to be mined by strip-mining operations, the application for a strip-mining permit must include the written consent or waiver by the owners of the surface lands involved to enter and commence strip-mining operations on the land, * * *" Genie Land has refused to give permission to Western Energy Company to strip-mine. Western Energy does not have the right to enter for purposes of strip-mining and, therefore, has no incidental right to enter for purposes of compiling resource inventories.

The effect of the majority decision is to say, "although you have no deeded right to enter for the purpose of conducting resource inventories and although under the law you have no right to strip-mine without the owner's consent, we will imply a right to enter for resource inventory because resource inventories were unknown at the time the deed was executed, and since such inventories were unknown, it must have been

within the contemplation of the parties that, had they been known, they would have been included." I cannot understand this reasoning process. I can see no basis whatever, either in the deed or in law, for the result which the majority reaches.

I would reverse and remand with directions to proceed in conformity with this dissent.

Justice