# FILED

January 21 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0037

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 12

PINNACLE GAS RESOURCES, INC.,

      Plaintiff and Appellee,

  v.

DIAMOND CROSS PROPERTIES, LLC,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DV 07-150
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Loren J. O'Toole, II.; O'Toole Law Firm; Plentywood, Montana

      For Appellee:

            Christopher Mangen, Jr.; Crowley, Haughey, Hanson, Toole &
Dietrich, PLLP; Billings, Montana

Submitted on Briefs:  September 24, 2008

Decided:  January 21, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendant Diamond Cross Properties, LLC (Diamond Cross) appeals from the District Court's entry of a preliminary injunction in favor of Plaintiff Pinnacle Gas Resources, Inc. (Pinnacle). We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court err by allowing Pinnacle to present testimony in support of its motion for preliminary injunction after presenting its case-in-chief, and by issuing an injunction in reliance upon that testimony?

¶4 2. Did the District Court err by granting Pinnacle's request for a preliminary injunction despite Pinnacle's failure to fully give the statutory notice of entry upon Diamond Cross' property?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Pinnacle holds an oil and gas lease to a portion of the mineral interests in land owned by Diamond Cross. In conjunction with the lease agreement, a Surface and Damage Agreement (SDA) between the parties gives Pinnacle the right to enter the land in order to exercise its right to drill for oil and gas. The primary term of the lease was written to expire on January 11, 2008, but the term could be extended by the commencement of drilling operations on the land by Pinnacle before that date.

¶6 On November 15, 2007, Pinnacle's senior landman, Larry Sare, spoke with Lonnie Wright on the telephone concerning Pinnacle's intention to commence drilling on the Diamond Cross property, and scheduled a meeting of the parties on the land to discuss the location of drilling. Lonnie Wright is a part owner of Diamond Cross, the principal

shareholder's son-in law, and apparent manager of the ranchland at issue. That same day, Sare mailed a letter concerning the drilling to "Diamond Cross Ranch, Attn: Lonnie Wright" at Wright's address. Sare intended the letter to satisfy the notice requirements for drilling contained in § 82-10-503, MCA ("Per Title 82, Chapter 10, Part 5, MCA, please be notified that Pinnacle Gas Resources ("PGR") plans to begin drilling operations . . . ."). However, instead of sending the letter to the address for Diamond Cross listed on county records, as required by the statute, Sare sent it to Wright's address.

¶7 On November 27, 2007, Sare, Wright, and others met at the property to discuss access for and location of the drilling. On December 7, 2007, Sare sent another letter to Wright at Wright's address. This letter reviewed what the parties had discussed during their meeting on the property and included a check for the drilling fee of $300, as required by the SDA.

¶8 On December 14, 2007, counsel for Diamond Cross sent a letter to Sare which stated that Pinnacle had not satisfied the notice requirements under the statute and that, until Pinnacle did, Diamond Cross would consider Pinnacle a trespasser, not permit entry, and "pursue all legal remedies should Pinnacle breach the peace and attempt entry onto the Diamond Cross Ranch."

¶9 On December 17, 2007, Sare responded by mailing a letter to Diamond Cross' counsel at counsel's law office address. Sare's letter addressed the alleged notice shortcomings mentioned in counsel's letter of December 14, and stated that drilling would begin on January 7, 2008.

3

¶10 On December 31, 2007, Pinnacle filed a Verified Complaint and moved for a preliminary injunction to enjoin Diamond Cross from preventing Pinnacle from entering and drilling on the property. Diamond Cross filed a brief in opposition, arguing that Pinnacle failed to satisfy the statute because it had sent notice to Wright's address and to Diamond Cross' counsel's address, but not to the address for Diamond Cross listed on county records.[1]

¶11 On January 8, 2008, the District Court conducted a hearing on Pinnacle's motion for preliminary injunction. Relying upon the allegations of its Verified Complaint, Pinnacle offered no evidence, but provided only argument to the court. Diamond Cross then argued that the motion should be denied because Pinnacle's Verified Complaint was insufficient under the statute to constitute evidence, noting it had warned Pinnacle of this potential insufficiency in chambers prior to the hearing. Diamond Cross further argued that Pinnacle's failure to comply with the statute left it without a right of entry. Pinnacle then requested leave to call a witness to verify the facts in the Complaint, which the District Court granted over Diamond Cross' objection. After hearing the testimony, the District Court granted Pinnacle's motion for preliminary injunction, concluding that Pinnacle would be irreparably harmed without relief and that Diamond Cross could not prevent Pinnacle from entering to drill on the land. Diamond Cross appeals.

**STANDARD OF REVIEW**

---

[1] Diamond Cross' initial objection, as expressed in its counsel's letter to Sare of December 14, 2007, was that Pinnacle had failed to "sufficiently disclose the plan of work and operation" as required by the statute. However, Diamond Cross' objection since the commencement of litigation has been Pinnacle's failure to use the correct address for delivery of the statutory notice.

¶12 "The grant or denial of a preliminary injunction is so largely within the discretion of the district court that we will not disturb its decision, barring a manifest abuse of discretion." *Yockey v. Kearns Props., LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, ¶ 12, 106 P.3d 1185, ¶ 12 (citing *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 11, 319 Mont. 132, ¶ 11, 82 P.3d 912, ¶ 11). "A manifest abuse of discretion is one that is obvious, evident, or unmistakable." *Yockey*, ¶ 12 (citation omitted). "[A] preliminary injunction does not determine the merits of the case" and our analysis "is not intended to express and does not express any opinion about the ultimate merits" of the case. *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 19, 334 Mont. 86, ¶19, 146 P.3d 714, ¶ 19 (internal citation and quotation omitted). "In addition, we review a district court's conclusions of law to determine whether its interpretation is correct." *Yockey*, ¶ 12 (citation omitted).

## DISCUSSION

¶13 **1. Did the District Court err by allowing Pinnacle to present testimony in support of its motion for preliminary injunction after presenting its case-in-chief, and by issuing an injunction in reliance upon that testimony?**

¶14 At the preliminary injunction hearing, Pinnacle initially presented no evidence, stating it would rely upon its Verified Complaint as an affidavit pursuant to § 27-19-303(2), MCA, which provides, in pertinent part, as follows:

> (2) Upon the hearing each party may present affidavits or oral testimony. An injunction order may not be granted on affidavits unless:
> (a) they are duly verified; and
> (b) the material allegations of the affidavits setting forth the grounds for the order are made positively *and not upon information and belief*.

(Emphasis added.)

5

¶15 Noting that the allegations of Pinnacle's Complaint were verified by the President and CEO of Pinnacle "to the best of my knowledge, belief and understanding," Diamond Cross objected to use of the Complaint as evidence in support of the injunction request, arguing it was insufficient under the statute. In response, the following exchange occurred:

> [Counsel for Pinnacle]: [Diamond Cross] has raised a question about the sufficiency of the verification of the Complaint, so if the Court doesn't mind, I'd like to call Larry Sare to the stand for Pinnacle Resources.
>
> THE COURT: All right. If you will be sworn.
>
> [Counsel for Diamond Cross]: I guess I'm going to object, Your Honor, because procedurally, you know, you don't – I didn't put anything on. So now this is rebuttal testimony to what? There's – I mean, there's nothing to rebut.
>
> THE COURT: [to Counsel for Diamond Cross] I'm going to allow it and if you care to have some testimony, I'll allow you the same privilege.
>
> [Counsel for Diamond Cross]: I appreciate it.
>
> THE COURT: Go ahead.
>
> [Counsel for Pinnacle]: Yes, Your Honor. I'm calling Mr. Sare primarily because [Counsel for Diamond Cross] questioned the sufficiency of this verification. So I'm going to have him verify it.
>
> THE COURT: I understand. Go ahead.

¶16 Diamond Cross argues that Pinnacle failed to present any proper evidence during its case-in-chief, and that the District Court erred by permitting Pinnacle to call a witness in what was essentially Pinnacle's rebuttal, except that Diamond Cross had submitted no evidence to rebut. Diamond Cross asserts that "[b]y permitting Pinnacle to call a witness

6

at this stage of the proceeding, the district court granted Pinnacle an unwarranted second opportunity to present evidence."

¶17 A district court has general discretion to conduct the proceeding in an appropriate manner. "The order in which proof is admitted at trial is within the sound discretion of the trial court." *Stockman Bank of Mont. v. Potts*, 2006 MT 64, ¶ 18, 331 Mont. 381, ¶ 18, 132 P.3d 546, ¶ 18. "A determination of whether proposed testimony is admissible as rebuttal testimony in any given case is within the sound discretion of the District Court, and we will not reverse the District Court's ruling unless it abused this discretion." *Massman v. City of Helena*, 237 Mont. 234, 243, 773 P.2d 1206, 1211 (1989). Similarly, "[t]he reopening of a case for the introduction of further evidence after it has been closed is within the discretion of the trial court. Its ruling upon the request to reopen will not be disturbed by the appellate court, unless there has been a clear abuse of discretion." *Stavenjord v. Mont. St. Fund*, 2003 MT 67, ¶ 19, 314 Mont. 466, ¶ 19, 67 P.3d 229, ¶ 19 (citation and quotation omitted). After initial production of their respective evidence, "[t]he parties will then be confined to rebutting evidence unless the court, for good reasons in furtherance of justice, permits them to offer evidence in their original case." Section 25-7-301(4), MCA.

¶18 In *Maxwell v. Anderson*, 181 Mont. 215, 593 P.2d 29 (1979), the trial court allowed the plaintiff to introduce evidence of attorney's fees after its case in chief. We held that:

> [Appellants contend] that they were injured by the court's action by the mere fact that Maxwell was permitted to put on evidence and received an award. This has nothing to do with the injury that might result from a

7

> disorderly presentation of evidence. No showing is made that appellants were injured by the *manner* in which the evidence was presented. While reopening a case-in-chief may not be desirable, a more substantial showing of harm should be made before this is declared reversible error.

*Maxwell*, 181 Mont. at 222-23, 593 P.2d at 33 (emphasis in original). Diamond Cross does not argue that it was disadvantaged or that unreliable evidence was admitted. We have also held that testimony presented at a hearing can overcome shortcomings in a verified complaint. *DeLaurentis v. Vaino*, 169 Mont. 520, 524, 549 P.2d 461, 464 (1976).

¶19 Thus, the question is whether the District Court abused its discretion by allowing the testimony after Pinnacle closed its case-in-chief. Pinnacle rested its case upon the assumption that the Verified Complaint constituted admissible evidence. Diamond Cross challenged Pinnacle's injunction request, not upon evidence of its own, but by arguing that Pinnacle's evidence was not admissible. Pinnacle then requested the opportunity to call a witness, not with the purpose of offering new or additional facts, but to verify the information in the Verified Complaint which Diamond Cross had objected to as technically insufficient under § 27-19-303(2), MCA.

¶20 Our review of the proceeding and the authorities lead us to conclude that the District Court's granting of Pinnacle's request was not an abuse of its discretion to conduct the proceeding before it. As such, it was permissible for the District Court to rely upon the evidence it had admitted to determine whether to issue the preliminary injunction.

8

¶21 **2. Did the District Court err by granting Pinnacle's request for a preliminary injunction despite Pinnacle's failure to fully give the statutory notice of entry upon Diamond Cross' property?**

¶22 Diamond Cross argues that the District Court erred by granting a preliminary injunction because Pinnacle failed to provide notice to Diamond Cross as required by § 82-10-503(1), MCA. Pinnacle responds that a preliminary injunction was proper because Diamond Cross had no right to prevent Pinnacle from entering the land under the lease, even if Pinnacle failed to give proper notice. Further, Pinnacle asserts that Diamond Cross received actual notice and that the spirit of the notice requirement was satisfied.

¶23 Section 27-19-201, MCA, provides, in pertinent part, that a preliminary injunction may be issued:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;

The subsections of the statute are disjunctive, and a party seeking an injunction must establish a basis for relief under only one subsection. *Shammel*, ¶ 15.

¶24 The parties contest the application of the three subsections quoted above. Under subsection (1), Diamond Cross argues that Pinnacle has no right of entry unless statutory

9

notice is given and thus Pinnacle is not entitled to "the relief demanded," that, under subsection (2), Pinnacle will not suffer any injury, and, under subsection (3), Pinnacle has no rights which are being violated. Pinnacle responds that Diamond Cross has no right to keep it from exercising its rights under the lease and that it would suffer irreparable injury in the absence of a preliminary injunction by being unable to extend the term of the lease.

¶25 Without expressing an opinion as to the ultimate merits of the case, we review the District Court's grant of the preliminary injunction to determine if it manifestly abused its discretion in concluding that Pinnacle demonstrated it was entitled to injunctive relief under at least one subsection of § 27-19-201, MCA. The District Court reasoned that Pinnacle had a legal right to enter upon the subject lands as a lessee, and that it would be irreparably harmed if Diamond Cross was not enjoined from interfering with that right "because the primary term of the subject lease is due to expire unless drilling operations are commenced . . . ."

¶26 Whether Pinnacle has a likelihood of success on the merits of its claim that Diamond Cross has improperly interfered with its rights under the lease requires a review of § 82-10-503(1), MCA, which provides:[2]

> In addition to the requirements for geophysical exploration activities governed by Title 82, chapter 1, part 1, the oil and gas developer or operator shall give the surface owner and any purchaser under contract for deed written notice of the drilling operations that the oil and gas developer

---

[2] The District Court discussed this statute during the hearing, but did not reference it in the order granting the preliminary injunction. Implicit in the District Court's order is the conclusion that this statute did not prevent Pinnacle from entering the property to pursue drilling under the lease. We review that conclusion of law for correctness.

10

or operator plans to undertake. The notice must be given to the record surface owner and any purchaser under contract for deed at their addresses as shown by the records of the county clerk and recorder at the time the notice is given. The notice must include a copy of this part and, if available, a current publication produced by the environmental quality council entitled "A Guide to Split Estates in Oil and Gas Development." The notice must sufficiently disclose the plan of work and operations to enable the surface owner to evaluate the effect of drilling operations on the surface owner's use of the property. The notice must be given no more than 180 days and no fewer than 20 days before any activity that disturbs the land surface. The surface owner may waive the notice requirement.

¶27 It is undisputed that Pinnacle satisfied all of the statute's requirements, except for sending the notice to the surface owner's address "as shown by the records of the county clerk and recorder . . . ." Section 82-10-503(1), MCA. Diamond Cross does not dispute that it received actual notice, but asserts that "[u]ntil Pinnacle gives statutory notice, it simply does not have the right of entry."

¶28 Pinnacle responds that "there is nothing in [the Act], other statutes, common law, or the agreement between the parties, that allows Diamond Cross to stop Pinnacle from going onto the subject lands and commencing drilling operations." It notes that the remedy provided by statute for violating the notice requirement is the possible imposition of a penalty by the Board of Oil and Gas Conservation upon report of the violation. Section 82-10-510, MCA, states that "[f]ailure to comply with the notice requirements of 82-10-503 subjects the oil and gas developer or operator to the provisions of 82-11-122 and 82-11-147 through 82-11-149." In turn, the referenced sections give authority to the Board of Oil and Gas Conservation to impose penalties for violations of the statute. Further, § 82-10-511, MCA, provides that "[t]he remedies provided by this part do not preclude any person from seeking other remedies allowed by law."

11

¶29 The common law has long recognized that mineral interest holders have a right of entry and reasonable use of the surface property as necessary to exercise their mineral rights. *See Western Energy Co. v. Genie Land Co.*, 195 Mont. 202, 208, 635 P.2d 1297, 1301 (1981) ("[I]t is well-settled that the owner of the oil and mineral estate has a right to enter upon the surface of the property and make such use thereof as is reasonably required for the enjoyment of his estate therein."); *see also Hurley v. Northern P. Ry. Co.*, 153 Mont. 199, 202, 455 P.2d 321, 323 (1969). In addition to the common law, the lease agreement at issue here explicitly permits Pinnacle to enter the land to exercise its mineral rights.

¶30 Diamond Cross' apparent argument or assumption is that the common law rule has been altered by the passage of § 82-10-501, MCA, et seq. However, nothing in the plain language of the statute prohibits a mineral holder from entering the land if the statutory notice has not been given. Neither does the plain language grant the surface owner any power or right to prohibit the mineral holder from entering the property. Instead, the statute provides that, upon report of a violation, the Board of Oil and Gas Conservation may impose a penalty and, secondly, makes clear that a surface owner is free to pursue any other remedy available under the law. Thus, from an initial review, it does not appear that the statute was intended to abrogate the common law right of entry, and Diamond Cross has not pointed to any other authority which would arguably bar Pinnacle from entering the land for failure to provide the statutory notice.

¶31 Instead, Diamond Cross argues that the statute's preservation of "other remedies" means that lease forfeiture has been preserved as a remedy. Diamond Cross reasons that,

unlike other areas of contract law, forfeiture of oil and gas leases has long been favored, and that this Court has held that a leaseholder's failure to comply with the requirements of the lease agreement requires forfeiture. *Solberg v. Sunburst Oil & Gas Co.*, 76 Mont. 254, 246 P. 168 (1926) (developer did not begin drilling within the time specified). Diamond Cross notes we have held, because time is of the essence, that a breach consisting of a slightly late lease payment is a breach sufficient to warrant forfeiture, *Sandtana, Inc. v. Wallin Ranch Co.*, 2003 MT 329, 318 Mont. 369, 80 P.3d 1224 (payment to extend the term was made two days after date specified in lease), and that breach of implied covenants of the lease can warrant forfeiture. *Berthelote v. Loy Oil Co.*, 95 Mont. 434, 446, 28 P.2d 187, 190 (1933) ("the plain and substantial breach" of implied covenants terminates the lease). Therefore, Diamond Cross asks that we declare Pinnacle's lease forfeited.

¶32 While we would not be inclined to order a forfeiture in a preliminary injunction case, it is enough to point out that, although forfeiture was ordered under the cases cited by Diamond Cross for breach of a mineral lease, Diamond Cross has not alleged any breach of the lease agreement by Pinnacle. Neither has Diamond Cross cited to any case which permitted forfeiture for anything other than a breach of the lease or its implied covenants.

¶33 Upon this absence of authority from either the common law or the statute, Pinnacle has established a likelihood of success on its claim that Diamond Cross has no right to prohibit Pinnacle from entering and drilling upon the property because of its failure to provide the statutory notice. Without reaching the ultimate merits of the

dispute, we conclude that Diamond Cross has failed to establish that the District Court rendered an incorrect conclusion of law at this juncture, or that it manifestly abused its discretion in granting the preliminary injunction after considering the likelihood of Pinnacle's success on the merits of its claim and the likelihood of irreparable harm if relief is not granted.

¶34   Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice James C. Nelson concurs.

¶35   I concur in the result of the Court's Opinion on the narrow facts of this case.  I do not agree with all that is said, however.

¶36   As to Issue 1, there is no question that Pinnacle's complaint was not properly verified.  It has been well settled for decades that verification "on information and belief" is defective because the affiant is not swearing to and signing the document on personal knowledge of the facts attested to.  *Saunders Cash-Way, etc. v. Herrick,* 179 Mont. 233, 587 P.2d 947 (1978); *see also* § 1-5-602(5), MCA.  Here, the trial court was generous in allowing Pinnacle to cure its defectively verified complaint by giving what was

14

effectively rebuttal testimony. Nonetheless, at least for purposes of the injunction hearing, I cannot conclude that the trial judge abused his discretion.

¶37 As to Issue 2, § 82-10-503(1), MCA, permits "[t]he surface owner [to] waive the notice requirement." I conclude that Diamond Cross waived statutory notice under § 82-10-503, MCA, to the extent that Pinnacle did not give notice, as required, at the address shown "by the records of the county clerk and recorder at the time the notice is given." Diamond Cross, through one of its principals, Lonnie Wright, participated in oral discussions with Pinnacle's representative at the ranch, and in conjunction with those discussions accepted written correspondence and the statutory notice at Wright's address. Clearly, Diamond Cross had actual notice of Pinnacle's intentions. Therefore, under these facts, given that Wright accepted the statutory notice at his address used in other correspondence with Pinnacle, I conclude that Diamond Cross effectively waived the requirement for notice at the address in the county clerk and recorder's office.

¶38 That said, however, I am not prepared to agree with the Court's statement in ¶ 30, that "it does not appear that [§ 82-10-503, MCA] was intended to abrogate the common law right of entry . . . ." Sections 82-10-501 to 511, MCA, constitute a comprehensive statutory scheme to protect surface owners from damage and disruption of their agricultural operations. Section 82-10-501, MCA. As a result, there are severe criminal and civil penalties for violating the notice statute, § 82-10-503, MCA. *See* § 82-10-510, MCA, and §§ 82-11-147 to 149, MCA.

¶39 With that in mind, § 1-2-103, MCA, provides:

15

**Statutes in derogation of the common law - liberal construction.**
The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of the state of Montana. The statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be *liberally construed with a view to effect their objects and to promote justice.* [Emphasis added.]

Contrary to this statute which requires the Court to *liberally* construe § 82-10-503, MCA, the Court narrowly construes the statute by concluding that the leaseholder may enter upon the surface of the land even if the statutory notice has not been given, and that the surface owner is powerless to prohibit such entry. Opinion, ¶ 30.

¶40    It is true, as the Court observes at ¶¶ 31-32, there is a harsh penalty for a leaseholder's failure to timely comply with the drilling requirements of an oil and gas lease—the lease is forfeited. However, the operator's decision to conduct its drilling operations in the eleventh hour of the lease's primary term should not, under a liberal construction of § 82-10-503, MCA, constitute a sort of self-created emergency that requires the surface owner to stand idly by, powerless to prevent the leaseholder from entering upon the surface owner's land, damaging his property, and disrupting his agricultural operations, without first complying with the statutory notice requirements. The surface owner should not have to rely on the Board of Oil and Gas Conservation or on the local county attorney to—maybe—enforce or punish the operator's lack of diligence after the fact and after the damage is done. Surface owners worked too hard to get the Legislature to enact §§ 82-10-501 to 511, MCA, and to secure the protections afforded by this statutory scheme. In my view, the Legislature did intend to abrogate the

16

common law right of entry and reasonable use, and I cannot agree with the Court's statements to the contrary.

¶41 Accordingly, while on the narrow facts of this case I concur in the result of the Court's Opinion, I cannot agree with its statements in ¶ 30.

/S/ JAMES C. NELSON