2014 VT 13

## In re Bjerke Zoning Permit Denial

[93 A.3d 82]

No. 13-108

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed January 24, 2014

*Alan Bjerke,* Burlington, Appellant.

*Kimberlee J. Sturtevant,* Assistant City Attorney, Burlington, for Appellee.

¶ 1. **Crawford, J.** Applicant appeals the Environmental Division's affirmance of the Burlington Development Review Board's decision to deny his application for a zoning permit to alter the exterior of his house. Applicant argues that his zoning permit application was "deemed approved" because the municipal zoning administrator did not act upon it within thirty days. He further claims that the Environmental Division erred by admitting the municipal zoning ordinance into evidence after trial and putting the burden of proof of compliance with that ordinance on applicant. Finally, applicant challenges the Environmental Division's interpretation of the zoning ordinance. We affirm.

¶ 2. In July 2010, applicant applied for a zoning permit to modify a duplex house that he owns in the City of Burlington. The building is more than fifty years old and remains largely intact in its original form, although an addition and a deck have been added to the rear of the structure. Applicant proposed to raise a portion of the original roofline to match the roofline of the addition. Applicant also proposed to replace the hipped roof porticos at secondary entrances on the south side of the building with gable roof canopies, and to replace some of the original small, irregularly spaced windows with larger, more evenly spaced windows.

¶ 3. Applicant submitted his proposal to the City's Department of Planning and Zoning on July 7, 2010. City planner Mary O'Neil contacted applicant via email on July 12. She informed applicant that the building was listed on the Vermont State Register of Historic Places, and therefore his proposed changes would not comply with standards 2, 5, and 9 of § 5.4.8(b) of the City of Burlington Comprehensive Development Ordinance. She stated that "[a]s proposed, staff cannot support the proposed development. I can place this one on a Design Advisory Board agenda for their review, but expect that they will review the ordinance standards and find your application in conflict with the above sections." On July 13, applicant responded that he had "decided to plow forward with this application as presented," and asked when the next Design Advisory Board meeting would be.

¶ 4. The Design Advisory Board (DAB) is an independent board created by Comprehensive Development Ordinance § 2.5.1. Upon

request of the Development Review Board or a zoning administrator, the DAB will review zoning permit applications and provide written advice and recommendations to the Development Review Board.

¶ 5. On July 21, the zoning administrator put applicant's project on the DAB agenda for its August 10, 2010 meeting. At that meeting, which applicant attended, the DAB reviewed applicant's permit application and ultimately voted to table the application. The notes from the meeting indicate that the proposed changes to the porticos and windows were acceptable to the DAB, but that the DAB asked applicant to submit a revised drawing for the roofline that would leave the original structure clearly differentiated from the proposed addition.

¶ 6. Applicant brought a revised drawing to City planner O'Neil on October 1 and showed it to her. Planner O'Neil informed applicant that she did not think that the revised drawing reflected the changes that the DAB had requested, but he could submit it and she would take it to the DAB for review. Applicant did not submit the drawing, nor did he indicate whether he preferred to proceed with the original application or that he would submit another revised plan. On December 3, applicant met with City zoning administrator Kenneth Lerner and requested that the permit be "deemed approved" under 24 V.S.A. § 4448(d). Mr. Lerner wrote to applicant on December 15 stating that the City had suspended permit review as of August 10 in order to allow applicant to submit revised plans to address the concerns of the DAB, and that the permit was not deemed approved.

¶ 7. Applicant appealed from the zoning administrator's determination to the Development Review Board. After conducting a hearing, the Board issued a decision on February 15, 2011. The Board concluded that the permit was referred to an appropriate municipal panel, the DAB, within thirty days of the date that the application was deemed complete (July 21), and therefore the deemed approval remedy was unavailable to applicant. Applicant did not appeal this decision.

¶ 8. After the Board's decision issued, applicant met with the City twice to attempt to resolve the design issue. On March 3, 2011, applicant informed the City that he did not intend to amend his original plan. The zoning administrator denied the permit application on March 4, 2011.

¶ 9. Applicant appealed to the Development Review Board, which affirmed the zoning administrator's denial of the permit. Applicant then appealed to the Environmental Division. The court denied applicant's motion for summary judgment on the issue of deemed approval, finding that the City had both issued a decision and referred the application to an appropriate municipal panel within thirty days of applicant's application. After a site visit and merits hearing, the court issued a decision on February 14, 2013 in which it concluded that applicant's permit application failed to comply with the historic preservation standards in § 5.4.8 of the City's zoning ordinance. That decision is the subject of the current appeal to this Court.

¶ 10. We first address applicant's argument that the Environmental Division erred in awarding summary judgment to the City on applicant's claim that his permit application was deemed approved. Our review of the Environmental Division's decision on a motion for summary judgment is de novo. *In re Beliveau NOV*, 2013 VT 41, ¶ 7, 194 Vt. 1, 72 A.3d 918. "Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Ayer v. Hemingway*, 2013 VT 37, ¶ 13, 193 Vt. 610, 73 A.3d 673 (quotation omitted); V.R.C.P. 56(a).

¶ 11. ▉ ▉ The deemed-approval rule is a statutory remedy that protects property owners from undue administrative delay. Section 4448(d) of Title 24 provides that "[i]f the [zoning administrator] fails to act with regard to a complete application for a permit within 30 days, whether by issuing a decision or by making a referral to the appropriate municipal panel, a permit shall be deemed issued on the 31st day." Similarly, § 3.2.5 of the City's zoning ordinance provides:

> The administrative officer shall take action with regard to a complete application within 30 days. Such action shall be to issue a decision on the application pursuant to the authority granted in Sec. 3.2.7 of this Article, or by making a referral to the [Development Review Board]. Should the administrative officer fail to take any such action, a permit shall be deemed issued on the 31st day pursuant to 24 V.S.A. § 4448(d). Modifications to a pending application by an applicant shall restart any applicable time limits, commencing upon the modification date.

The purpose of the deemed-approval remedy is " 'to curtail indecision and protracted deliberations in the zoning decision-making process and to constitute a final decision to provide a mechanism for any interested party to appeal the decision.' " *In re Trahan NOV*, 2008 VT 90, ¶ 12, 184 Vt. 262, 958 A.2d 665 (quoting *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 526-27, 739 A.2d 1241, 1246 (1999) (interpreting predecessor statute to § 4448)). "Given the possible consequences of granting permits inconsistent with the zoning requirements, we must be careful to use [the deemed-approval remedy] only where its application is clearly consistent with statutory intent." *Id.* (quotation omitted).

¶ 12. Applicant's claim in this case is similar to that advanced by the appellants in *Trahan*. In *Trahan*, landowners requested a permit for a pond that they had already built. Approximately two weeks later, the zoning administrator sent the landowners an opinion memorandum stating that the pond was in violation of the town's setback regulations. When the landowners failed to respond, the zoning administrator issued a notice of violation. The landowners appealed the notice of violation to the zoning board, which issued a decision affirming the notice of violation two months later. The zoning administrator then denied the permit. The landowners claimed on appeal that their permit request had been deemed approved when the zoning administrator failed to "act" upon their request within thirty days, and that the zoning administrator could not deny a permit that had been approved by operation of law.

¶ 13. We held that, to the contrary, the zoning administrator had promptly investigated the application and notified the landowners in a timely manner that the pond violated the town's regulations. We noted that the determination that the pond was in violation of the setback regulations necessarily meant that the administrator could not issue a permit without a variance. *Trahan*, 2008 VT 90, ¶ 14. The notice of violation was also a de facto notice that the permit was denied unless the zoning board ruled differently on appeal. *Id.* Accordingly, we held that the zoning administrator "ruled in a timely manner on the exact question that determined landowners' right to a permit, however she labeled that ruling." *Id.*

¶ 14. ▮ Similarly, in this case a City planner notified applicant within five days of receiving his application that a permit could

not issue because the proposed modifications would violate the historic preservation regulations of the City's zoning ordinance.[1] She offered him the options of submitting a revised application or meeting with the DAB. As in *Trahan*, this record does not reflect "indecision or protracted deliberation on the part of zoning authorities." *Id.* ¶ 13. Applicant was informed very quickly that his permit request, as submitted, violated the City's zoning ordinance and would be denied unless modified. We conclude that the zoning administrator therefore complied with § 4448(d) and the City's zoning ordinance by issuing a decision on the permit application within thirty days. Because the administrator complied with these provisions, the permit did not issue by operation of law. The Environmental Division properly awarded summary judgment to the City on this issue.[2]

¶ 15. Applicant's second argument is that the Environmental Division improperly admitted the City's zoning ordinance into evidence after trial. During the July 26, 2012 merits hearing, the court admitted a certified copy of the ordinance into evidence. Applicant objected to its admission. After the close of evidence but prior to the court's entry of judgment, the City filed a letter with the court indicating that a portion of the ordinance had been omitted by accident from the copy admitted into evidence at trial. The court struck the copy that had been admitted from evidence because the copy was not a true, accurate, and complete copy, as required by V.R.E. 902. However, because applicant had cited the ordinance in his statement of questions, the court held a hearing on whether it should reopen the evidence. The court concluded that it should, and immediately conducted a partial new trial under V.R.C.P. 59(a) and (d) on the limited issue of whether the

---

[1] It is undisputed that planner O'Neil was an assistant administrative officer assigned to review appellant's permit application and was authorized to act on behalf of the zoning administrator in this case. Section 2.3.2 of the City's zoning ordinance includes such assistants within the definition of "zoning administrative officer."

[2] The court also concluded that even without the denial of the permit by the City planner, the referral to the DAB within thirty days satisfied the requirement of a referral to an appropriate municipal panel as required by 24 V.S.A. § 4448(d). Because we agree with the Environmental Division that the "deemed approved" deadline was satisfied by the denial of the permit by the City planner, we do not address the issue of whether referral to the DAB, which serves as an advisory body to the Development Review Board, provides a second basis for concluding that the City responded in a timely fashion to appellant's zoning application.

ordinance could be admitted into evidence. The City produced a second certified copy that had no missing pages, and the court admitted it into evidence.

¶ 16. ■ ■ The trial court has broad discretion to permit further evidence to be offered after the close of evidence in a trial but prior to entry of final judgment. See *Cliche v. Fair*, 145 Vt. 258, 261, 487 A.2d 145, 148 (1984) (noting that trial court has control over order and presentation of evidence); see also *Greg A. Becker Enters., Ltd. v. Summit Inv. Mgmt. Acquisitions I, LLC*, 725 S.E.2d 841, 843 (Ga. Ct. App. 2012) (holding that trial court has discretion to decide whether to reopen evidence after hearing); *Singh v. City of Hartford*, 974 A.2d 810, 813 (Conn. App. Ct. 2009) (stating that trial court has discretion to reopen evidence after close of testimony and prior to final judgment where it will not substantially prejudice any party); *Pinnacle Gas Res., Inc. v. Diamond Cross Props., LLC*, 2009 MT 12, ¶ 17, 201 P.3d 160 ("[T]he reopening of a case for the introduction of further evidence after it has been closed is within the discretion of the trial court.") (quotation omitted). The Environmental Division in this case did not err by reopening the evidence for the limited purpose of introducing a complete copy of the zoning ordinance. As the court noted, applicant's appeal centered upon the interpretation of a provision of the ordinance that was missing from the original version submitted by the City. Without the relevant language of the ordinance before it, the court could not properly address applicant's claims.

¶ 17. ■ Applicant further argues that the Environmental Division improperly took judicial notice of the ordinance by stating that it knew there was a zoning ordinance in Burlington. This argument has no merit. The existence of the ordinance was not at issue, and a copy of the zoning ordinance had already been admitted — though it was subsequently stricken because relevant pages were missing — so it was not improper for the court to state that the City had an ordinance. While it is true that a court may not take judicial notice of the contents or validity of an ordinance, that did not occur here. See *Hambley v. Town of St. Johnsbury*, 130 Vt. 204, 208, 290 A.2d 18, 20 (1972) (explaining well-established principle that courts cannot take judicial notice of local ordinances).

¶ 18. ■ Third, applicant claims that the Environmental Division erred by placing the burden of proof of the existence of the ordinance and applicant's compliance with that ordinance on applicant rather than the City. This contention also is without merit. It is true that the City had the burden of proving that it had enacted a zoning ordinance. It met this burden through the introduction of a version of the ordinance at trial. With the court's permission, it later provided a corrected copy. As the party seeking to reverse the City's denial of his permit application, applicant had the burden of proving that his application actually complied with the ordinance. See *L.M. Pike & Son, Inc. v. Town of Waterford*, 130 Vt. 432, 437, 296 A.2d 262, 266 (1972) (applicant for zoning variance had burden of proving that it met requirements of ordinance).

¶ 19. *Town of Waterford v. Pike Industries, Inc.*, 135 Vt. 193, 373 A.2d 528 (1977), cited by applicant, addresses a different problem. In that case, the town sought to enjoin a factory owner from operating its plant and the factory owner challenged the validity of the ordinance as an affirmative defense. Because the town sought to enforce the ordinance, it had the burden of proving that the ordinance was validly enacted. *Id.* at 195-96, 373 A.2d at 530.

¶ 20. The validity of the City's ordinance was never at issue in this case. Although the court asked applicant at the hearing how he could prove compliance with the zoning ordinance if it was excluded from evidence, the order of proof at the hearing as well as the court's written decision demonstrate that the court correctly placed the burden of proving the existence of a city zoning ordinance — an issue about which there could have been little doubt in any event — on the City. The City ultimately met its burden of proof by offering into evidence a certified, corrected copy of the ordinance after the court reopened the evidence to correct the copying mistake.

¶ 21. Finally, applicant argues that the Environmental Division applied the historic preservation standards "in a mandatory fashion" and improperly declined to consider the economic and technical feasibility of the internal living space. Section 5.4.8 of the City's zoning ordinance sets forth a series of standards and guidelines for review of all applications involving historic buildings. It states that "[t]hese Standards are intended to be applied in a reasonable manner, taking into consideration economic and tech-

nical feasibility." The Environmental Division held that the ordinance related only to external features and material considerations, and that it would therefore not consider the economic and technical feasibility of the internal functionality of the building. Applicant argues that the court should have considered that his proposed changes to the roof were necessary to improve the single bathroom in the residential apartment in the duplex, which currently has such a low ceiling that a person cannot stand up fully in the shower area.

¶ 22. Our goal in interpreting an ordinance, like a statute, "is to give effect to the legislative intent." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). "Our review of an interpretation of a zoning ordinance by the Environmental Division is deferential." *In re Toor*, 2012 VT 63, ¶ 9, 192 Vt. 259, 59 A.3d 722. We will overrule the Environmental Division's construction of the ordinance only if it is clearly erroneous. *In re Pierce Subdiv. Application*, 2008 VT 100, ¶ 17, 184 Vt. 365, 965 A.2d 468. Because zoning ordinances limit common law property rights, any uncertainty must be resolved in favor of the property owner. *In re Weeks*, 167 Vt. 551, 555, 712 A.2d 907, 910 (1998). "[W]e will not enforce laws that are vague or those that delegate standardless discretion to town zoning boards." *In re JAM Golf, LLC*, 2008 VT 110, ¶ 17, 185 Vt. 201, 969 A.2d 47. These rules of construction require the Environmental Division to interpret vague and uncertain zoning provisions in favor of property owners in the first instance. In reviewing the work of the Environmental Division, we recognize their special expertise in interpreting zoning ordinances and give deference to their rulings in this area.

¶ 23. We conclude that the Environmental Division's interpretation of § 5.4.8 is reasonable. Other than the first standard, which addresses changes in the use of a historic building, such as from residential to commercial use, the standards relate to the external appearance and materials of historic buildings. No mention is made of the functionality of the internal living space. The Environmental Division's interpretation is also consistent with the City's interpretation of the relevant provision of the ordinance. The City planner testified below that the City considers internal use in reviewing proposed changes to a structure under the zoning ordinance only if there is a change of use or a change of the intensity of use, such as an increase in the number of residential

units in a building. Otherwise, the City looks only at exterior alterations. Applicant points to other portions of the City's zoning ordinance that do address internal use such as the inclusionary housing regulations, which set the minimum size of a unit and minimum bedroom size. The presence of these policy provisions in other parts of the zoning ordinance does not mean that the City must also consider the feasibility of desired internal uses in acting on a permit application involving alterations to a historic building. Applicant has not shown that these provisions are relevant to this case.

*Affirmed.*